FRANCIS ROACH, plaintiff in error, vs. THE STATE OF GEORGIA, defendant in error.

[1.] Ordinarily, upon a trial for homicide, it is not necessary for the evidence to show where the deceased died, in order to give the Court jurisdiction.
[2.] Newly discovered evidence is not a cause for a new trial when the verdict ought to be the same with it as without it.

Indictment for Murder. In Chatham Superior Court. Motion in Arrest of Judgment and for New Trial. Decided by Judge FLEMING. May Term, 1864.

At May Term, 1863, of Chatham Superior Court, Francis Roach was tried for the murder of Patrick Tye, and found guilty of voluntary manslaughter.

The indictment charged, both that the mortal blow was given in Chatham county, and that the deceased died in that county.

The facts of the case as they appeared in evidence, were substantially these:

The prisoner and the deceased, the latter being physically much the larger man, were friends, and had just taken drinks together at a bar room. They seated themselves in a shoe shop, in company with some other men, one of whom was Welch, the owner of the shop. The prisoner, the deceased, and Welch, all apparently under the influence of liquor, though not drunk, engaged in a friendly conversation about manhood and wrestling. The deceased at last asserted that they three could whip any other three. The prisoner told the others to hush up, and said he could get a man that could whip all three. The deceased said it was a lie; and the prisoner laughed, rose up, and lighted his pipe; then seeming suddenly to get angry, he turned round and told the deceased again to shut up. He reseated himself, and immediately afterwards the deceased again gave the lie, or said it was a lie. All the three, the prisoner rising first,

then sprang up, advanced, and came together, Welch placing himself between the other two. The room was not more than twelve feet wide, and their position, when they met, was some where about the middle of it. The prisoner drew his knife, and while he was in the act of drawing it, Welch caught him; but his right arm remaining free, he struck twice at the deceased over Welch's shoulder. The first blow missed or glanced off, but the second took effect on the deceased's head. Welch then pushed the prisoner, who backed into a corner of the room, where there was a shelf some four feet above the floor, Welch shoving him along, and the deceased following closely up, seeming, as one witness stated, to be trying to get to the prisoner, and as another stated, resting his hands on Welch's shoulders, apparently stupid and unconscious of danger. The prisoner, while in the corner, and in a stooping position, made a thrust with his knife past the side of Welch, and stabbed the deceased mortally in the left side. This occurred on the 29th day of December 1862, in the city of Savannah, county of Chatham.

A physician, whose office was in a neighboring street, was called in immediately. He testified at the trial, that there were slight wounds on the forehead, another on the head, (a bruise) and one in the left side reaching to the interior of the stomach; and that from this last, death took place on the 31st day of December 1862.

The prisoner, at the trial, requested the Court to charge the jury, that they must acquit him, because it was not shown by the evidence that the deceased died in Chatham or in any other county of Georgia, nor indeed where he died. The Court refused so to charge; and charged, on the contrary, that it was unnecessary to prove that the death took place in Chatham or in any other county of Georgia: and the prisoner excepted.

After the return of the verdict, the prisoner moved in arrest of judgment and for a new trial, (combining both objects in one motion,) on the grounds that the Court erred in the refusal and in the charge above mentioned; that the

evidence did not show that the deceased died in Chatham or in any other county of Georgia; that the verdict was without evidence to support it; that it was contrary to the weight of the evidence; that it was contrary to law; and that new and material evidence had been discovered since the rendition of the verdict.

This last ground was supported by the affidavit of one John Counts, who swore that, coming up during the progress of the difficulty, and looking in at the window, he saw three men scuffling, prisoner, the deceased, and Welch; that Welch being between the others and having the prisoner round the waist, was shoving him back, and shoved him back until he got him away into the corner; that while the shoving was going on, the deceased struck the prisoner over Welch's shoulder, and then put his hand in his pocket, as if to draw a knife, when the prisoner stabbed him; and that deponent never communicated his knowledge of these facts to the prisoner or his counsel until after the verdict was rendered.

The prisoner also made affidavit to the non-discovery of this evidence until after verdict; to his past diligence; and to his belief of being able to procure evidence in time for another trial, manifesting his innocence.

His Honor, Judge Fleming, at May Term, 1864, delivered his judgment, overruling the motion. His decision, with the reasons for it, was written out at length, and sent up in the record. It makes no mention of any of the grounds of the motion except two: the ground that the evidence did not show that the deceased died in Chatham, or in any other county of Georgia; and the ground of newly discovered evidence. Moreover, it treats the motion as two distinct motions: one in arrest of judgment, the other for a new trial; and it assigns to the first exclusively, the ground touching the alleged deficiency in the evidence, and to the second exclusively, the ground touching the newly discovered evidence.

The bill of exceptions alleges that he erred, 1st, in refusing to arrest the judgment upon each of the grounds stated in his decision; and 2d, in refusing to grant a new trial upon the same grounds.

In the Supreme Court, the case was submitted for the plaintiff in error on the Brief of Counsel.

It was argued for The State by HEIDT, Solicitor General.

LUMPKIN, C. J.

The well considered opinion of Judge Fleming is so clear, forcible, and convincing upon all the grounds taken by counsel for the plaintiff in error in this bill of exceptions, that we cannot do better than to substitute it as our own, and make it the judgment of this Court.   It is as follows:

"The motion in arrest of judgment is made on the ground that there was no proof to show that the Court had jurisdiction.   This want of jurisdiction is contended for on the ground that there is no evidence to show that the deceased died in the county of Chatham, or in any other county of the State of Georgia.   Assuming for the present, that "The testimony does not show that Patrick Tye died in the county of Chatham, or in any other county of the State of Georgia," does it follow that the Court had no jurisdiction ?

By the Constitution of Georgia, " all crimes shall be tried in the county where the crime was committed. " Where was this crime committed ? Counsel says "in the county or place where the death occurs." At common law this answer is correct.   But section 4,557 of the Code says: " when any mortal wound shall be given, or any poison shall be administered, or any other means shall be employed in one county, by which a human being shall be killed, who shall die thereof in another county, the indictment shall be found and the offender shall be tried in the county where the act was performed or done, from which the death ensued. " It is not denied, that, according to the testimony, the mortal blow was given in the county of Chatham.   But the argument is, that this is not enough; that it must be shown that the deceased died *in the State of Georgia.*   Such is not my interpretation of the statute.   My idea is, that the statute assumes,

11

that when the mortal blow is given in one county of the State, the death takes place in that county; but, if, in the course of the trial, it should appear that the death took place in another county, still, that fact should not change the jurisdiction—in this respect changing the common law, and which was all that the Legislature contemplated or intended. In other words, at common law the jurisdiction attached in the county where the death occurred; by statute, the jurisdiction attaches in the county where the mortal blow was given. The next section of the Code gives us the cases in which it is necessary to prove the place of death, in order to give jurisdiction. Section 4,558 says : " If such wound be given or poison administered upon soil, the jurisdiction over which has been ceded to the Confederate States within the geographical limits of this State, or within the territory of an adjoining State, and death shall ensue therefrom in any county of this State, the indictment shall be found, and the cause tried in the county where the death occurs." These are the only cases in which it is necessary to prove the *place of the death*, in order to give jurisdiction. In all other cases, it is only necessary to prove the place where the mortal blow was given. When, therefore, counsel call upon the prosecution to prove the place of the death, he must *first prove* that the mortal blow was given upon soil, the jurisdiction over which has been ceded to the Confederate States within the geographical limits of this State, or within the territory of an adjoining State. I refuse the motion, then, even if it be true that there is no proof that Tye died in Georgia. But is it true? Can any one read this testimony and doubt that Tye, not only died in Georgia, but that he died in Chatham county? No witness has said in so many words, that he died in Chatham county, but it is in evidence that the difficulty in which Tye received his death wound, occurred in " Welch's" shop, Chatham county, Georgia. It is in evidence that the wound was a severe one, the knife entering between the 9th and 10th ribs, cutting the cartilage of the rib, and *entering the stomach*. (See Dr. Mooney's

testimony.) With such a wound, is it probable, is it even *possible*, that he could have been carried out of Chatham county, much less could he have been carried out of the State of Georgia. The wound was received on the 29th of December; he died on the 31st. Dr. Mooney was called in immediately. As he proves that he died on the 31st, can any one doubt that he attended him from the 29th to the 31st? Can any one doubt that he attended him in Chatham county, and that he attended him until he died? In the absence of all proof to the contrary, can any one doubt that Tye died in the county of Chatham?

The motion for new trial is made on the ground of newly discovered testimony. Applications for new trial on this ground are not favored by the Courts, and very properly not favored, for if they were favored, litigation would become endless. For this reason, the applicant is held to very strict rules. It is not one of these rules, as stated by counsel, that the evidence, if produced, *might* produce a different verdict; the rule is, might *probably* produce a different verdict. The minds of men are so differently constituted, that it is impossible to say what might possibly be the effect of certain evidence. We may, however, have some idea as to the *probable* effect of evidence; for we are authorized to suppose that evidence will *probably* have .that effect to which it is entitled. Is it probable that this newly discovered evidence would have produced a different verdict? I feel perfectly satisfied in my own mind, that this evidence *ought not to produce* a different verdict; and, therefore, I conclude that it *probably* would not have produced a different verdict. To understand the weight and effect to which this new testimony is entitled, we must take it in connection with the testimony had upon the trial. The new testimony is this : The witness, John W. Counts, it seems, was standing on the corner of Montgomery and Bryan streets, when he heard a row on the opposite side of the street, and on being informed that one of his company was in a row, went immediately over to see what was the matter. On going over, he looked *through a window* and saw five persons in the house. One was Roach. The other men

were Tye, Welch, and two others unknown to witness. When deponent looked through the window, he saw three men scuffling; they were Roach, Tye, and Welch. Welch was between Roach and Tye, and had Roach around the waist shoving him back, and shoved him back until he got him in the corner, and while Welch was shoving Roach back, Tye struck Roach over Welch's shoulder, and then put his hand into his pocket, as if to draw a knife, when Roach stabbed him. This testimony, by itself, makes out a pretty fair case of self-defence; but when you connect it with what had happened *before the witness looked through the window*, it utterly fails to make out any such case. Let us see, then, what had happened previously. Thomas Roony testifies that Tye, Roach, and Welch, were talking about wrestling, running, and jumping; after they had talked some time, they went into Welch's, next door, and continued to talk about wrestling, when Roach said he could get a man that could whip them, or something to that effect. As soon as he made that remark, Tye said it was a lye. They instantly jumped up—the whole party; Welch got between them, *and Roach drew his knife, struck across Welch twice;* the first blow missed, the second, witness thinks, struck Tye, and cut him on the head; Welch then shoved Roach back into the corner, when he stabbed Tye. At the time Tye was struck over the head, he was behind Welch; the positions were the same at the time the stab was given. Roach reached Tye with his knife, who was behind Welch, by shoving it by Welch. Peter C. Cook confirms Roony in the important fact, that Roach drew his knife in the beginning of the difficulty, and struck twice at Tye, whilst Welch had hold of him, one of the blows taking effect. Dr. Moony confirms both of the witnesses, by proving other wounds besides the one which occasioned death, and which Counts saw from the window. How, then, does the matter stand? Roach had drawn his knife and inflicted a blow, if not two blows, before the fact occured to which Counts testifies. Suppose that either of the two first blows had been fatal, would not Roach have been guilty? Was not the third blow, and which proved

fatal, given in obedience to the same mad impulse that prompted the two first? It is a far fetched idea to suppose that the third blow was given in self-defence; it is clear to my mind, that it was but a continuation of the same murderous assault, with a deadly weapon, to which both the witnesses testify. If, at the moment, it was necessary to his self-defence, he brought the necessity upon himself. Suppose I see a man in the act of shooting me, and to save myself, I rush upon him with a deadly weapon, would my attack upon him justify his shooting me? Would his shooting me be considered an act of self-defence? Would it not rather be considered as a carrying out of his original purpose? True, his shooting me might, at the moment, be necessary; but it is a necessity of his own creation, and cannot avail him as a denfence. Such is the case before me. Roach had attacked with a deadly weapon; no apprehension that a deadly weapon would be used to resist him, can justify him in the further use of his weapon. Such use must be considered as a carrying out of his original intention. Any other doctrine would give a loose rein to violence and murder. No man can attack another with a deadly weapon, without *knowing* that he puts his own life at hazard; and if this hazard is to justify him, then murder ceases to be a crime.

The motion in arrest of judgment, and the motion for a new trial, are both overruled.