### S05A1225. THE STATE v. MAYZE.

(622 SE2d 836)

CARLEY, Justice.

In 2003, Owanna Lloyd, who resides in Clayton County, misplaced his wallet in Fulton County. Using information contained in the wallet, Willie Mayze allegedly accessed Mr. Lloyd's credit history in DeKalb County. Eventually, Mayze was arrested and charged in Clayton County with two counts of identity fraud in violation of OCGA § 16-9-121. In accordance with OCGA § 16-9-125, venue of the prosecution was predicated on Mr. Lloyd's residence in Clayton County.

Mayze filed a demurrer to the indictment, asserting that OCGA § 16-9-125 was unconstitutional insofar as it authorized venue of an identity fraud prosecution in the county where the victim "resides or is found, . . . regardless of whether the defendant was ever actually in such county." After a hearing, the trial court sustained the demurrer, and the State brings this appeal from that order.

We note at the outset that, in creating the crime of identity fraud and providing for venue of the prosecution in the county where the victim resides or is found, Georgia is not alone. A growing number of other states have enacted comparable provisions, including the following: Alabama (Ala. Code § 13A-8-196); Connecticut (C.G.S.A. § 54-1d (c)); District of Columbia (DC Code § 22-3227.06 (1)); Florida (West's F.S.A. § 817.568 (15), (16)); Illinois (720 ILCS 5/1-6 (s)); Iowa (I.C.A. § 715A.8 (5)); Kentucky (KRS § 514.160 (5)); Maryland (MD Code, Criminal Law, § 8-301 (m) (2)); Michigan (M.C.L.A. § 762.10c (1) (c)); Minnesota (M.S.A. § 609.527, Subd. 6 (1)); Missouri (V.A.M.S. § 541.033 (2)); Nevada (2005 Nevada Laws Ch. 485 (S.B. 347), § 13 (2) (effective October 1, 2005)); New Hampshire (N.H. Rev. Stat. § 638:27); New Mexico (N.M.S.A. 1978, § 30-16-24.1 (G)); North Carolina (NC Sess. Laws 2005-414, § 2 (effective December 1, 2005)); North Dakota (NDCC § 12.1-23-12); Pennsylvania (18 Pa.C.S.A. § 4120 (e.1)); Utah (U.C.A. 1953 § 76-1-201 (7)); Virginia (Va. Code Ann. § 18.2-186.3 (D)); Washington (West's RCWA § 9.35.020 (5)). The precise issue presented for resolution in this case is the constitutionality of the venue provision of our statute. "[A]ll criminal cases shall be tried in the county where the crime was committed . . . ." Art. VI, Sec. II, Par.

VI of the Georgia Constitution of 1983. The General Assembly is certainly bound by this provision, and cannot enact a law providing for the prosecution of a crime in any county other than that wherein it was committed. Nevertheless, it is equally clear that " '[t]he power to create crimes and to prescribe punishment therefor is legislative.' [Cit.]" (Emphasis omitted.) *Knight v. State*, 243 Ga. 770, 771 (1) (257 SE2d 182) (1979). Thus, if the offense of "identity fraud," as defined by the General Assembly, is one which occurred in the county where the victim resides or is found, then there is no constitutional impediment to trying the defendant there.

Art. VI, Sec. II, Par. VI of our Constitution does not limit venue in a criminal case to one county. It provides for trial in whatever county the offense was committed. A crime may be ongoing or continuing, in which case venue would be appropriate in any county wherein the offense occurred. See *State v. Kell*, 276 Ga. 423 (577 SE2d 551) (2003). Mayze contends that the continuing crime theory does not apply because identity fraud, as defined by OCGA § 16-9-121, can be committed only in a county wherein the defendant obtained or recorded identifying information of the victim or accessed or attempted to access the resources of the victim. That interpretation of the limited scope of the offense presumably is based on the so-called "verb test," whereby the verbs which appear in a criminal statute and relate to the proscribed conduct are the determinative factor in identifying the substantive nature of the offense. It is true that "[s]tudying 'the key verbs which define the criminal offense in the statute is helpful in determining venue in doubtful cases.' [Cit.]" *State v. Kell*, supra at 425. However, this Court, like the Supreme Court of the United States, has

> never before held . . . that verbs are the sole consideration in identifying the conduct that constitutes an offense. While the "verb test" certainly has value as an interpretative tool, it cannot be applied rigidly, to the exclusion of other relevant statutory language. The test unduly limits the inquiry into the nature of the offense and thereby creates a danger that certain conduct prohibited by statute will be missed.

*United States v. Rodriguez-Moreno*, 526 U. S. 275, 280 (II) (119 SC 1239, 143 LE2d 388) (1999) (interpreting Art. III, Sec. 2, Cl. 3 of the Federal Constitution, which provides that "[t]he Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed" and which is, therefore, virtually identical to our comparable state constitutional provision). Thus, exclusive reliance on the "verb test" when considering the constitutionality of a venue provision enacted by the General Assembly is inappropriate. "[O]ther

relevant statutory language" must be considered in determining the scope of the prohibition imposed by OCGA § 16-9-121 and, consequently, the location of permissible venues for a prosecution under that statute.

OCGA §§ 16-9-121 and 16-9-125 are in pari materia and must, therefore, be construed together. See generally *State v. Griffin*, 268 Ga. 540, 542 (491 SE2d 340) (1997). Looking beyond the verbs contained in OCGA § 16-9-121 and giving consideration to the additional language contained in OCGA § 16-9-125, the General Assembly has clearly defined the crime of identity fraud as a continuing offense which extends into the county where the victim resides or is located. OCGA § 16-9-125 expressly states:

> The General Assembly finds that identity fraud involves the use of identifying information which is uniquely personal to the consumer or business victim of that identity fraud and which information is considered to be in the lawful possession of the consumer or business victim wherever the consumer or business victim currently resides or is found. Accordingly, the fraudulent use of that information involves the fraudulent use of information that is, for purposes of this article, found within the county where the consumer or business victim of the identity fraud resides or is found.

This "other relevant statutory language" clearly indicates that, regardless of where the victim's *records* may be physically located, the nature of the offense of identity fraud is the protection of the personal *information* contained therein. Moreover, that information is deemed to be in the lawful possession of the victim, so that when a defendant violates OCGA § 16-9-121 by engaging in an unauthorized access to the records, he thereby engages in the fraudulent use of information located in the county where the victim resides or is found. Since the crime of identity fraud, as thus defined by OCGA §§ 16-9-121 and 16-9-125 when read in pari materia, takes place in the county where the victim and his or her personal information are located, there is no constitutional bar to trying the defendant in that county.

Therefore, the "act" which constitutes the crime of "identity fraud" does occur in the county of the victim's residence, because that act is the unauthorized use of the victim's personal information. There is a valid connection between the act of accessing records and the use of information contained therein. Regardless of where the records were accessed, the use of the information obtained therefrom is consummated in the county where the victim lives. There is not any constitutional impediment to the authority of the General Assembly to define a crime in such a manner as to provide that a defendant's

conduct which takes place in one jurisdiction culminates in an unauthorized act or, as in this case, an unauthorized use occurring in another. As another example of the breadth of the constitutional power to legislate in this context, we note that the General Assembly could provide that the venue of a murder case is in the county where the death occurred, regardless of where the fatal act took place. *Roach v. State*, 34 Ga. 78, 82 (1864) (holding that "at common law the jurisdiction attached in the county where the death occurred; by statute, the jurisdiction attaches in the county where the mortal blow was given."). This shows that the General Assembly is not constitutionally bound by the "verb test," and can establish legislatively whether the crime of murder occurred where the defendant committed the act or where the victim died. If the "verb test" is not a limit on the General Assembly's authority to define the crime of murder so as to compel a prosecution where the accused's act occurred, it cannot constitute a limit on legislative authority to define the crime of "identity fraud" so as to provide that an unauthorized use of information can be prosecuted in the county of residence of the victim whose privacy was invaded.

The conclusion that OCGA § 16-9-125 passes constitutional muster is further supported by a recent Alabama decision. Art. I, Sec. VI of the Alabama Constitution is virtually identical to the comparable provision in our Constitution, and provides that criminal prosecutions in that state are to be held in "the county or district in which the offense was committed . . . ." The relevant provision of the Alabama "identity theft" statute is also comparable to our "identity fraud" law, and provides that the crime is committed if a defendant,

> without the authorization, consent, or permission of the victim, and with the intent to defraud for his or her own benefit or the benefit of a third person, . . . [o]btains, records, or accesses identifying information that would assist in accessing financial resources, obtaining identification documents, or obtaining benefits of the victim.

Ala. Code § 13A-8-192 (a) (1). In accordance with a legislative enactment that is analogous to our OCGA § 16-9-125, venue of a prosecution for violating the Alabama identity theft statute is

> in any county in which any part of the crime took place, regardless of whether the defendant was ever actually present in that county, or in the county of residence of the person who is the subject of the identification documents or identifying information.

Ala. Code § 13A-8-196. As against the assertion that this venue provision was unconstitutional, the Court of Criminal Appeals of Alabama held that

> we believe that the Legislature . . . defined the crime of identity theft as a continuing offense. [Cit.] . . . "Venue in a criminal case, though a constitutional matter, requires an inquiry into what conduct the statute proscribes." [Cit.] "(A) review of relevant authorities demonstrates that there is no single defined policy or mechanical test to determine constitutional venue. Rather, the test is best described as a substantial contacts rule that takes into account a number of factors — the site of the defendant's acts, the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of each district for accurate factfinding . . . . Places that suffer the effects of a crime are entitled to consideration for venue purposes. Such districts have an obvious contact with the litigation in their interest in preventing such effects from occurring. To some extent this factor overlaps with the definition and nature of the crime . . . ." [Cits.] Section 13A-8-190, et seq., Ala. Code 1975, entitled, "The Consumer Identity Protection Act," by its very name was enacted to protect Alabama citizens from defendants seeking to steal their identities. Section 13A-8-196 specifically provides that venue is proper where the victim resides. [Cit.] This issue has no merit.

*Ex parte Egbuonu*, 911 S2d 748 (Ala. Crim. App. 2004).

This analysis by the Alabama court is compelling and, although not controlling, is persuasive authority for the construction of our own analogous constitutional and statutory provisions. A contrary holding based upon rigid adherence to the "verb test" would have the unfortunate effect of depriving the residents of Georgia of the protection which the General Assembly sought to provide them as against those who seek to steal their identities. A victim of identity fraud in this state would not have any protection against one who stole his or her identity by unauthorized access to records located outside of Georgia. Even when the records are located in this state, the victim would be put to the time and expense of traveling to the county where his or her records were maintained to testify in the prosecution. It is undisputed that this Court has the duty to safeguard the defendant's constitutional right of prosecution in the county where the crime was committed. However, we also have the responsibility of upholding the General Assembly when it passes constitutional legislation to protect the citizens of this state by

authorizing a criminal prosecution in their counties of residence as against those who would make fraudulent use of the personal information located in those counties.

Notwithstanding the dissent's protestations to the contrary, today's decision is actually an extremely narrow one. The extent of our holding is that, when exercising its constitutional power to create crimes, the General Assembly is authorized to define identity fraud in such a way that, regardless of where the defendant may have accessed the records, the offense actually constitutes an unauthorized use of the personal information contained therein, which proscribed conduct occurs in the county where the information and the individual who is the subject thereof, rather than the underlying records themselves, are located. Thus, the dissent misrepresents our holding by asserting on page 16 that we have "overlook[ed] the undisputed fact that no element of the offense of identity fraud as set forth in OCGA § 16-9-121 actually occurred in the county where the defendant was tried in this case." The truth is that, in resolving this appeal, we have not erroneously limited our consideration to OCGA § 16-9-121, but we have instead properly taken into account that statute and all other provisions which are in pari materia. What is overlooked by the dissent is that OCGA § 16-9-125 clearly provides that an element of the offense is the unauthorized use of personal information, which element occurs in the county where the victim lives. The fact that the language denoting identity fraud as an offense involving the victim's possessory interest in his or her own personal information appears in OCGA § 16-9-125, rather than OCGA § 16-9-121, does not have any constitutional significance.

Essentially, the dissent fails to acknowledge the fundamental distinction between the location where a defendant commits an act and the site where a crime occurs. The Constitution does not require that the General Assembly provide that venue of a prosecution shall be only in the county where the accused committed a physical act. So long as venue is set in the county where the crime occurred, as that crime is defined by the General Assembly, the constitutional mandate is satisfied. The dissent does not suggest any reason why, for purposes of protecting the citizens of this state from unauthorized use of their personal information, the General Assembly cannot constitutionally determine that the locus of the crime is where the victim resides or is found, regardless of the fortuitous location where the defendant accessed the records containing the information. Unlike homicide or other crimes against the person, identity fraud is an offense against the victim's possessory interest in his or her personal information. Establishing the victim's residence as the venue of a prosecution for a crime committed through the invasion of that possessory interest certainly is not "based completely on fictional concepts." Dissent, p.

15. Personal information is an intangible commodity. Therefore, as evidenced by the numerous statutes from other jurisdictions which are analogous to ours, it is entirely reasonable to provide that, personal information is deemed to be located in whatever county the owner of that information resides.

The dissent apparently believes that its analysis is predicated upon a strict construction of our Constitution. However, the holding that it proposes would violate the principle of the separation of powers, invade the constitutional authority of the General Assembly to create crimes, and substitute the judiciary's determination as to proper venue for the legislative decision. The principle of strict construction cannot be used as a tool to achieve an unconstitutional result.

Accordingly, we hold that OCGA § 16-9-125 complies with the constitutional mandate that the venue of a criminal case be set in the county where the crime was committed. Because it is alleged that Mayze committed the crime of identity fraud in Clayton County by using personal information which was in the lawful possession of a resident of that county, venue of the prosecution was proper. Therefore, the trial court erred in sustaining his demurrer to the indictment.

*Judgment reversed. All the Justices concur, except Sears, C. J., Hines and Melton, JJ., who dissent.*

MELTON, Justice, dissenting.

Today, on motion for reconsideration, the majority damages longstanding constitutional law in favor of the most palatable outcome, and, in doing so, effectively overrules Art. VI, Sec. II, Par. VI of the Georgia Constitution. As such, the majority opinion greatly exceeds the bounds of our authority, and it creates a dangerous precedent allowing this Court to rewrite the constitution both in cases regarding venue and any case involving interpretation of a constitutional provision which impinges on the power of either this Court or the General Assembly.

This case represents an instance in which the constitutionally-required holding leads to what can only be called an unfortunate result. Nonetheless, it is exactly in such unfortunate cases where we must fight hardest to safeguard our constitution and avoid the temptation to create bad law in order to reach the outcome that is most satisfying. Nevertheless, the majority muddies our constitutional waters when it is completely unnecessary to do so.

This is not a case about computers, yet the majority focuses its analysis on identity fraud committed by computer. This is not a case without a constitutional solution that does not exceed the authority of this Court or the General Assembly. The solutions to the immediate

problem surely exist, but they must be discovered by the General Assembly, not created by this Court based on factual scenarios not before us and through alteration of longstanding precedent. Finally, this is not a case about the General Assembly's discretion. It is, instead, a case about constitutional limitations placed on the General Assembly, limitations which the majority of this Court now removes, opening a floodgate that cannot be logically closed in all future cases regarding venue.

Without a doubt, identity fraud is a growing crime, and many have analogized it as a plague on our computer-driven society. As the crime evolves, our manner of dealing with it must evolve as well, but, as always, this legal evolution should occur within the framework of our constitution. The majority has wholly stepped outside of this all-important framework, and while I might prefer the majority's outcome, I must strongly dissent to it because it is derived by unconstitutional means.

1. This matter requires us to determine whether the statutory venue provisions set forth for the crime of identity fraud in OCGA § 16-9-125 satisfy the mandate of the Georgia Constitution of 1983 that a criminal case must be tried in the county where the crime was committed. OCGA § 16-9-125 as it is currently drafted is unconstitutional to the limited extent that it provides that venue for identity fraud is proper in the county where the victim resides or is found, irrespective of whether the defendant obtains or records identifying information of the victim or accesses or attempts to access the resources of the victim in the county of the victim's residence.

Art. VI, Sec. II, Par. VI of the Georgia Constitution provides: "[A]ll criminal cases shall be tried in the county where the crime was committed, except cases in the superior courts where the judge is satisfied that an impartial jury cannot be obtained in such county."[1] In criminal cases, venue requirements generally are for the benefit of the defendant, and "[v]enue is a jurisdictional fact that must be proved by the prosecution beyond a reasonable doubt." *Graves v. State*, 269 Ga. 772, 773 (1) (504 SE2d 679) (1998). Addressing venue for the crime of identity fraud, OCGA § 16-9-125 states, in turn:

> The General Assembly finds that identity fraud involves the use of identifying information which is uniquely personal to the consumer or business victim of that identity fraud and which information is considered to be in the lawful possession of the consumer or business victim wherever the consumer or business victim currently resides or is found.

---

[1] This constitutional mandate is codified at OCGA § 17-2-2 (a).

Accordingly, the fraudulent use of that information involves the fraudulent use of information that is, for the purposes of this article, found within the county where the consumer or business victim of the identity fraud resides or is found. Accordingly, in a proceeding under this article, the crime will be considered to have been committed in any county where the person whose means of identification or financial information was appropriated resides or is found, or in any county in which any other part of the offense took place, regardless of whether the defendant was ever actually in such county.

Given this definition, it must then be determined whether OCGA § 16-9-125 satisfies the mandate of Art. VI, Sec. II, Par. VI of the Georgia Constitution and accurately describes the places where identity fraud is committed.

The crime of identity fraud occurs when:

without the authorization or permission of a person with the intent unlawfully to appropriate resources of or cause physical harm to that person, or of any other person, to his or her own use or to the use of a third party he or she: (1) Obtains or records identifying information of a person which would assist in accessing the resources of that person or any other person; or (2) Accesses or attempts to access the resources of a person through the use of identifying information.

OCGA § 16-9-121.

Each element of identity fraud will have some specific situs. With this in mind, OCGA § 16-9-125 properly places venue "in any county in which any other part of the offense took place." In other words, this portion of the statute may appropriately be read to indicate that, due to identity fraud's nature as an ongoing crime, venue would be appropriate in any county in which an act in furtherance of the crime is committed. See, e.g., *State v. Kell*, 276 Ga. 423 (577 SE2d 551) (2003) (regarding venue for ongoing crime of medicaid fraud); *Callaway v. State*, 247 Ga. App. 310, 315 (2) (542 SE2d 596) (2000) (regarding venue for insurance fraud). In this way, venue is placed in any county where any portion of the crime has been committed.

To the extent, however, that OCGA § 16-9-125 places venue in the county where the victim resides or is found, irrespective of whether the defendant obtains or records identifying information of the victim or accesses or attempts to access the resources of the victim in the county of residence, the statute violates the constitutional mandate that a crime must be tried in the county where it is

committed. As the specific facts of this case show, the crime of identity fraud will not always occur in the county of the victim's residence, as contemplated by the current language of OCGA § 16-9-125.

In considering these issues, one must not confuse the situs where an act of identity fraud is committed with the place that the results of the crime are most strongly manifested. Identity fraud can be committed in any county; its manifestations, however, will be strongest at the home county of the victim. Unless the manifestations precipitated by an act constitute a part of the crime itself,[2] venue nonetheless must be placed where a crime occurs, not where its consequences are felt. Furthermore, although identity fraud may constitute a continuing crime, this classification does not automatically allow it to be tried in the county of the victim's residence. For a continuing offense, venue generally may be appropriate in any county where the crime was begun, continued, or completed.[3] The beginning, middle, or end of the crime of identity fraud, as currently defined by the General Assembly, does not always occur in the county of the victim's residence, as in this case.

Applying all of these rules and considerations to the case at hand, venue for Mayze's crimes of identity fraud does not lie in Clayton County, as Mayze did not obtain or record identifying information of the victim or access or attempt to access the resources of the victim there. Accordingly, the trial court's ruling on this issue should be affirmed.

2. Both the State and the majority argue that, unless OCGA § 16-9-125 is upheld, Georgia citizens will be vulnerable to identity fraud committed by individuals who may never come to this state. I certainly share this concern that, due to the complexities of modern technology, identity fraud has largely become a computer-based crime in which perpetrators from other states access computer databases containing the identifying information of victims in Georgia. In this case, which does not involve the use of a computer, there is no assertion that any element of the underlying offense occurred in the county of the victim's residence, where the case was ultimately tried. Therefore, as discussed above, this Court, under the proper constitutional analysis, has no discretion in its determination that, to the

---

[2] For example, some acts which criminally interfere with interstate commerce may be tried in the place where interstate commerce has actually been affected, as well as the place that the act causing the effect occurred. See, e.g., *United States v. Craig*, 573 F2d 513 (7th Cir. 1978) (violation of federal Hobbs Act properly tried in place where act of extortion impacted interstate commerce).

[3] See, e.g., *United States v. Muench*, 153 F3d 1298 (11th Cir. 1998) (violation of federal Child Support Recovery Act by failure to pay child support may be tried in county and state where child resides, as that is the place where the act is completed).

extent that it places venue in the county of the victim's residence irrespective of whether any element of the crime is committed there, OCGA § 16-9-125 is unconstitutional.

The solutions to this temporary problem must be crafted by the General Assembly, not created by this Court through a strained analysis which circumvents our constitution. In addressing instances of identity fraud perpetrated by individuals located outside of this State, the General Assembly may wish to look to statutory provisions such as OCGA § 16-9-94 (4) to address this situation.[4] The General Assembly might also choose to broaden the means by which identity fraud is committed in OCGA § 16-9-121 to include causing certain economic impact to the victim. Although the General Assembly could not dictate where the impact occurs by edict, economic harm to the victim will likely occur most profoundly in the county where he or she resides. Venue, therefore, might be proper in that county because an element of the crime occurred there, not because the General Assembly unconstitutionally assigned venue there irrespective of the facts involved.

3. In reaching its conclusion, the majority recognizes that the General Assembly holds the power to create crimes and to prescribe punishment for these crimes. The majority then states: "Thus, if the offense of 'identity fraud,' as defined by the General Assembly, is one which occurred in the county where the victim resides or is found, then there is no constitutional impediment to trying the defendant there."

This logic, though superficially appealing, omits at least two constitutionally important considerations. First and foremost, the majority's interpretation of the law renders the constitutional mandate regarding venue wholly meaningless. The majority fails to recognize that, although the General Assembly has the power to create crimes and prescribe punishment, it does not have the power to create venue by dictating the county in which the crime was committed, without regard to whether any part of the crime took place in that county.

The majority's opinion rests its analysis on the circular conclusion that venue exists anywhere the General Assembly indicates, irrespective of whether its choice of situs is based completely on fictional concepts. If adopted, this precept wholly negates the constitutional mandate that venue shall be in the county where the crime is committed, because the crime will be committed anywhere the

---

[4] Under this provision, venue for a computer crime under OCGA § 16-9-93 lies in "any county from which, to which, or through which any use of a computer or computer network was made, whether by wires, electromagnetic waves, microwaves, or any other means of communication."

General Assembly says it is. For example, under the majority's analysis, the General Assembly could legislate that murder is the taking of a victim's life, that this life (or identity) exists in the county of the victim's residence, and, therefore, venue always exists in the county of the victim's residence, even if it were undisputed that no act in furtherance of the murder occurred there. Despite the heinous nature of murder, our General Assembly recognized that it had to place venue in a place where there was at least some physical evidence that the crime occurred. See OCGA § 17-2-2 (c). We cannot apply any different set of rules to this case.

Second, the majority overlooks the undisputed fact that no element of the offense of identity fraud as set forth in OCGA § 16-9-121 actually occurred in the county where the defendant was tried in this case. As it is currently defined, impact upon the victim is not an element of the offense of identity fraud as set forth in OCGA § 16-9-121, fully considering *any* language therein. This analysis is not dependent on the "verb test," a doctrine wholly irrelevant to the required constitutional outcome in this case. What is relevant here is the fact that no element of the crime of identity fraud occurred in the county of the victim's residence. Moreover, where our Constitution mandates a determination of venue based specifically on where the offense in question was "committed," looking to the location where the acts making up the offense took place is not only reasonable, but required. This remains true even though it requires this Court to consider the meaning of verbs. Wholly fictional concepts of the situs of "identifying information" in OCGA § 16-9-125 cannot heal this statute's constitutional breach, and the majority's characterizations of the matter before us in terms of the "verb test" simply do not speak to this fundamental problem. As such, in this case, venue cannot be proper in the county of the victim's residence without violating the constitution.

In its opinion, the majority relies on an Alabama Court's recent decision in *Ex parte Egbuonu*, 911 S2d 748 (Ala. Crim. App. 2004)[5]

---

[5] In its compiled quotation from two wholly separate parts of *Egbuonu*, the majority omits the fact that the Alabama Court largely based its analysis regarding venue for continuing crimes on the following statement from *United States v. Johnson*, 323 U. S. 273, 275 (65 SC 249, 89 LE2d 236) (1944) (analyzing venue under the Federal Denture Act): "By utilizing the doctrine of continuing offense, Congress may, to be sure, provide that the locality of a crime shall extend over the whole area through which force propelled by an offender operates." Neither the Alabama Court nor the majority provide the full quote, which states:

> By utilizing the doctrine of a continuing offense, Congress may, to be sure, provide that the locality of a crime shall extend over the whole area through which force propelled by an offender operates. Thus, an illegal use of the mails or of other instruments of commerce may subject the user to prosecution in the district where he sent the goods, or in the district of their arrival, or in any intervening district. Plainly enough, such leeway not only opens the door to needless hardship to an

and notes that a number of other states have passed comparable venue provisions for identity fraud. Such a recitation is meaningless. We do not judge the constitutionality of our own laws by surveying other states' statutes.

To the contrary, in examining the venue provision for identity fraud, it is this Court's solemn duty to safeguard this state's constitutional mandate that all crimes shall be tried in the county where the crime is committed. It is evident from the General Assembly's language in OCGA § 16-9-125 that it desired to place venue in the county of the victim's residence because that is the place where the major impact of the crime will occur. The General Assembly, however, failed to define the crime of identity fraud in OCGA § 16-9-121 in such a way that this impact, itself, is a part of the crime committed. In the present case, no part of the underlying crime, as defined, actually occurred in the county of the victim's residence. Under these circumstances, OCGA § 16-9-125 is unconstitutional in the limited instances where it places venue in the county of the victim's residence irrespective of the fact that no part of the underlying crime actually occurs there. Based on the current drafting of the statutes regarding identity fraud, the desires expressed by the General Assembly regarding venue must give way to the overriding requirements of our constitution.

There is no dispute that identity fraud is a crime of a continuing nature, and its beginning, middle, and end may stretch across more than one county. It must be remembered, however, that identity fraud is a continuing crime because *acts taken in furtherance of the crime* may occur in different counties. It is not, as the majority argues, a continuing offense simply because it creates some impact to the victim in the county of his or her residence which lingers after the last element of the crime is complete. If this were true, then every crime which has some effect on an individual would be a continuing crime, be it theft, murder, identity fraud, or anything else. Likewise, any and every such crime could be brought in the county of the victim's residence, wherever that residence might be at the time of prosecution. As a result of such a construction, venue no longer has any real nexus to the situs of the criminal activity in question. Undoubtedly, this is not the result that the framers of our constitution intended. To the contrary, it is exactly this result they were trying to avoid.

accused by prosecution remote from home and from appropriate facilities for defense. It also leads to the appearance of abuses, if not to abuses, in the selection of what may be deemed a tribunal favorable to the prosecution.

Id. At the very least, *Johnson* is distinguishable from the concept of identity fraud, and, as such, it supports neither the majority nor *Egbuonu*.

18

I am authorized to state that Chief Justice Sears and Justice Hines join in this dissent.

DECIDED NOVEMBER 21, 2005.

Jewel C. Scott, District Attorney, Todd E. Naugle, Tiffany C. Boulware, Anece B. White, Assistant District Attorneys, for appellant. Brown & Gill, Angela B. Dillon, for appellee.