(297 P.3d 305)

No. 107,070

STATE OF KANSAS, *Appellant*, v. SAMANTHA THOMPSON COTY, *Appellee*.

—

Opinion filed March 22, 2013.

*Stephen R. McAllister*, solicitor general, *Kristafer R. Ailslieger*, deputy solicitor general, and *Derek Schmidt*, attorney general, for appellant.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, for appellee.

Before MCANANY, P.J., BUSER and STANDRIDGE, JJ.

MCANANY, J.: The State charged Samantha Coty in Ellis County with credit card fraud. The credit card Coty allegedly used was

physically located in Ellis County where the cardholder, Kenneth Jacobs, lived and worked. Coty was in Sedgwick County when she allegedly made unlawful charges using information from Jacobs' credit card. There was no evidence that Coty had ever been in Ellis County. The district court dismissed the charge, finding that Ellis County was not the proper venue for prosecution because no elements of the crime occurred there. The State appeals.

The Visa credit card was issued by UMB Bank to Jacobs in his capacity as plant director of Fort Hays State University in Ellis County. Jacobs was entitled to use the card for purchases related to his work at the university. He kept the card in a locked file cabinet in his office. He had not been to Wichita during the year and a half before the events surrounding this case and had not authorized anyone else to use the card during the relevant time period.

When UMB Bank inquired of Jacobs about certain purchases made with the card, it became apparent that information from the card was being used without Jacobs' consent to make purchases. One of the unauthorized charges was for the purchase of airline tickets. The tickets were purchased in Wichita through the Expedia on-line travel service and were for a flight from Wichita Mid-Continent Airport to Alexandria Air Force Base in Louisiana. The tickets were to be picked up at the airport on the day of the flight. Sedgwick County law enforcement authorities intercepted Coty at the airport when she arrived for the flight and claimed the tickets. Coty was arrested and eventually transported to Ellis County where she was charged with criminal use of a financial card in violation of K.S.A. 2012 Supp. 21-5828(a)(1). The complaint stated:

"That on or about the 13th day of September, 2011, in Sedgwick County, Kansas, Samantha Thompson Coty, then and there being present did unlawfully, feloniously, and knowingly use a number issued by Visa Credit Card, last four digits 0218, issued by UMB Bank Card Center to the cardholder Fort Hays State University, person authorized to use said card, Ken Jacobs, in Ellis County, KS, without the consent of cardholder Ken Jacobs, with the intent to defraud and to obtain, money, goods, property or services, and did obtain flight tickets on Continental Airline totaling $1,622.00 in violation of the 2010 Kansas Sessions Laws Chap 136 Sec. 114(a)(1), to be codified at K.S.A. 2011 Supp 21-5828(a)(1), formally codified

at K.S.A. 21-3729, Criminal Use of a Financial Card, a severity level 9 nonperson felony."

Coty moved to dismiss the charge on the grounds that the crime as alleged was committed in Sedgwick County and Ellis County was not the proper venue for the case pursuant to K.S.A. 22-2602. The district court dismissed the charge for lack of venue. In doing so, the court rejected the State's argument that failing to obtain the cardholder's consent was an act that occurred in Ellis County. The court found no evidence that "the defendant was in Ellis County at any time" and dismissed the charge because no elements of the crime took place in Ellis County. The court stated: "If the defendant charged using the financial card numbers without the consent of Kenneth Jacobs, the lack of consent occurred in Sedgwick County, and not in Ellis County."

We have unlimited review of the venue issue in this appeal. See *State v. McElroy*, 281 Kan. 256, 264, 130 P.3d 100 (2006). When resolving a claim of improper venue requires statutory interpretation, "such interpretation also raises issues of law subject to de novo review on appeal. [Citation omitted.]" 281 Kan. at 264-65.

Under our Kansas Constitution, Coty is entitled to be tried in "the county or district in which the offense is alleged to have been committed." Kan. Const. Bill of Rights, § 10; see K.S.A. 22-2602. In situations in which two or more acts are required for the commission of a crime and the acts occur in different counties, the State can prosecute the defendant in any county in which any such acts occurred. See K.S.A. 22-2603.

Coty was charged with criminal use of a financial card in violation of K.S.A. 2012 Supp. 21-5828(a)(1). That statute provides:

"(a) Criminal use of a financial card is any of the following acts done with intent to defraud and to obtain money, goods, property or services:
(1)   Using a financial card without the consent of the cardholder."

Coty has never visited Ellis County, and the unauthorized purchases were not for goods or services in Ellis County. Coty argues that "the elements of the alleged crime clearly took place" in Sedgwick County. The only issue before this court is whether Ellis

County is a proper venue based on the fact that it is where the cardholder, Jacobs, resides.

K.S.A. 2012 Supp. 21-5111(a) defines an "act" in our criminal code to include "a failure or omission to take action." The State argues that Coty's failure to obtain Jacobs' consent was an act that constitutes an element of the crime and that this act occurred in Ellis County because it is where Jacobs and the credit card were located when the unauthorized purchases were made.

The State relies on three Kansas cases for support: *State v. Boorigie*, 273 Kan. 18, 41 P.3d 764 (2002); *State v. Womelsdorf*, 47 Kan. App. 2d 307, 274 P.3d 662 (2012), *petition for rev. filed* May 10, 2012; and *State v. Jones*, 9 Kan. App. 2d 106, 673 P.2d 455 (1983).

In *Jones*, the earliest of these cases, Jones was in custody in Allen County awaiting trial on felony-theft charges. Jones required medical attention while in jail and was taken to a hospital in Kansas City, Missouri. When he was released from the Kansas City hospital, he absconded and failed to return to Allen County for trial. When Jones was apprehended, he was returned to Allen County and tried on the original theft charge plus a new charge of aggravated escape. On appeal, the court found that Allen County was an appropriate venue for the aggravated escape charge. 9 Kan. App. 2d at 106-07.

The court determined that Jones had an affirmative duty he had to perform in Allen County: the duty to return to the Allen County jail after being released from his medical treatment in Missouri. Having breached that duty when he absconded in Missouri, Jones could be tried in Allen County where he failed to perform this duty. Unlike Jones, Coty had no duty to perform in Ellis County. She had the duty not to use Jacobs' credit card information without his permission, but her use of the credit card without Jacobs' permission occurred in Sedgwick County, not Ellis County.

The State analogizes *Jones* to our present facts as follows: Jacobs in Ellis County was the victim of Coty's actions in Sedgwick County, just as Allen County was the victim of Jones' absconding in Missouri. Thus, the State argues that "the county in which the victim of a crime is located when the crime occurs is a logical and sensible place for jurisdiction and venue to lie." As we will discuss

later, this policy argument is best left to our legislature, as has been the case in 21 other states where state legislatures have enacted special venue statutes.

In *Boorigie*, the defendant was charged in Montgomery County with first-degree murder and arson, stemming from the death of his estranged wife. While awaiting trial, Boorigie asked several people to help him find someone willing to confess to the crimes. In most cases, Boorigie offered money in exchange for assistance. Not surprisingly, all of Boorigie's contacts refused. The State added charges of criminal solicitation to the pending murder and arson charges.

Two of the solicitation charges arose from conversations in the Elk County jail, where Boorigie was housed during part of the time he was awaiting trial in Montgomery County. The third charge related to a conversation that took place in Wilson County, while Boorigie was out on bond. Boorigie was convicted in Montgomery County of all of the charges.

On appeal, Boorigie argued that Montgomery County lacked jurisdiction over these three criminal solicitation charges because they arose from conversations that took place in other counties. But our Supreme Court determined that Montgomery County was an appropriate venue for the convictions because the criminal solicitations that took place in Elk and Wilson Counties related to the murder and arson crimes for which Boorigie was being prosecuted in Montgomery County. The *Boorigie* court held that because there was a "direct link between the Montgomery County criminal charges and the crimes committed in Elk and Wilson Counties, it is logical that Montgomery County was a proper venue for the prosecution of [Boorigie's] solicitations for false testimony." 273 Kan. at 24-25.

The facts in the present case are markedly different from those in *Boorigie*. The criminal solicitation charges against Boorigie would not have existed but for the original charges in Montgomery County. But in the present case, the crime charged against Coty did not arise from any prior criminal act that occurred in Ellis County.

In *Womelsdorf*, the most recent case cited by the State, the State charged the defendant in Anderson County with arson and insurance fraud in connection with a fire at Womelsdorf's home in Anderson County. Womelsdorf appealed her conviction for insurance fraud, arguing that she filed the insurance claim in Johnson County so Anderson County had no jurisdiction over the alleged crime. On appeal, the court determined that "the arson in Anderson County was requisite to the fraudulent insurance act in Johnson County. Under K.S.A. 22-2603 and the rationale of *Boorigie*, venue was proper in Anderson County." *Womelsdorf*, 47 Kan. App. 2d at 318-19.

The State argues that the "requisite act" in the present case was Coty's failure to obtain Jacobs' consent to use his credit card information. But failing to get Jacobs' consent was not a separate crime from the charge against Coty of credit card fraud the way insurance fraud was a separate crime from arson in *Womelsdosrf*, the way murder was a separate crime from criminal solicitation in *Boorigie*, and the way aggravated escape was a separate crime from felony theft in *Jones*.

The State's argument rests on the notion that the failure to obtain Jacobs' consent was an element of the underlying crime, which calls K.S.A. 2012 Supp. 21-5111(a) into play. We will next address that issue.

The State argues that criminal use of a financial card requires "[u]sing a financial card without the consent of the cardholder." K.S.A. 2012 Supp. 21-5828(a)(1). It claims that Coty's failure to obtain Jacobs' consent was an element of the crime. But this is not a case in which Coty called Jacobs in Ellis County to ask for permission to use the credit card and Jacobs refused. There is no evidence that Jacobs expressly denied consent. K.S.A. 2012 Supp. 21-5111(a) defines an "act" in our criminal code to include "a failure or omission to take action." The State argues that the act of not getting Jacobs' consent to use the card occurred in Ellis County, making Ellis County an appropriate venue under K.S.A. 2012 Supp. 21-5111(a).

In Kansas, several criminal statutes state that the act must be nonconsensual to be considered a crime. See, *e.g.*, K.S.A. 2012

Supp. 21-5803(a) (criminal deprivation of property); K.S.A. 2012 Supp. 21-5807(a) (burglary); K.S.A. 2012 Supp. 21-5813(a)(1) (criminal damage to property). In the case of burglary, for example, K.S.A. 2012 Supp. 21-5807 defines the crime as entering into or remaining within a dwelling, building, structure, vehicle, etc., without authority with the intent to commit a felony, theft, or sexual battery therein. Using the State's analysis, the act of not getting permission to enter the premises occurs where the owner of the premises is located so as to invoke criminal jurisdiction in the county where the owner resides. Thus, under the State's theory, if a person in Baxter Springs owns a farm house near St. Francis which is burglarized, the burglar could be prosecuted in either Cheyenne County in the northwest corner of the state where the house is located or in Cherokee County in the southeast corner of the state where the owner resides. We find no support for such a notion.

But the State argues that because of the nature of credit card fraud cases such as this, we should adopt a venue rule that permits prosecution where the cardholder resides. The State argues:

"Modern technology enables criminals to accomplish much crime in the netherworld of cyberspace while never physically crossing traditional geographic boundaries that typically have defined criminal jurisdiction.

"The question presented here is fundamentally one of fairness, and in particular of fairness to society and the victims of cyberspace crimes: when a criminal utilizes modern technology such as the internet from an unknown and often unknowable location to commit fraud, causing harm to an identifiable victim in a specific location, does jurisdiction to prosecute the crime lie in the victim's home county?"

Of course, these concerns do not apply to Coty. She was caught picking up the tickets in Sedgwick County, about 180 miles or so from where Jacobs lived. Sedgwick County was where the State contends Coty purchased the tickets. The tickets had been purchased on-line with a phone contact reference which was the same as Coty's Sedgwick County telephone number. Here, Coty's alleged act of using Jacobs' credit card information was not from an unknown or unknowable location. The State alleged that Coty used Jacobs' credit card information in Sedgwick County.

The State also argues that it is unfair to have the victim and the State's witnesses travel to Sedgwick County to prosecute this case. But here the contrary is true. Key witnesses for the State, law enforcement officers from the Sedgwick County Sheriff's Department, had to travel from Sedgwick County to Ellis County for the preliminary hearing.

In any event, while the State's policy concerns are worthy of serious consideration, these arguments should be directed to our legislature rather than to this court. Our role in government does not include engaging in and resolving such public policy debates. The legislatures in other states have addressed the issue and have enacted special venue statutes for these new types of crimes based on new technologies. We leave it to the Kansas Legislature to consider the wisdom of doing so in our state. See *State v. Britt*, 295 Kan. 1018, 1031, 287 P.3d 905 (2012).

In *State v. Mayze*, 280 Ga. 5, 622 S.E.2d 836 (2005), the Georgia Supreme Court considered the constitutionality of a special venue provision enacted by the Georgia Legislature as part of its identity fraud statute. Mayze obtained the victim's credit history in DeKalb County. The victim resided in Clayton County. Mayze was charged in Clayton County with identity fraud in violation of Ga. Code Ann. § 16-9-121 (2002). Pursuant to that statute, venue is proper where the victim " 'resides or is found, . . . regardless of whether the defendant was ever actually in such county.' " 280 Ga. at 5.

Mayze contended before the Georgia Supreme Court that the statute was unconstitutional in light of a provision in the Georgia Constitution that stated: " '[A]ll criminal cases shall be tried in the county where the crime was committed . . . .' Art. VI, Sec. II, Par. VI of the Georgia Constitution of 1983." *Mayze*, 280 Ga. at 5-6. Mayze interpreted this to mean that identity fraud could be committed only in a county where the defendant obtained or recorded identifying information of the victim, or where the defendant accessed or attempted to access the resources of the victim; in Mayze's case, DeKalb County.

The court rejected Mayze's constitutional challenge, holding that Georgia could charge Mayze in the county where the victim re-

sided as provided for by the statute. 280 Ga. at 7-8. The *Mayze* court held:

"The extent of our holding is that, when exercising its constitutional power to create crimes, the General Assembly is authorized to define identity fraud in such a way that, regardless of where the defendant may have accessed the records, the offense actually constitutes an unauthorized use of the personal information contained therein, which proscribed conduct occurs in the county where the information and the individual who is the subject thereof, rather than the underlying records themselves, are located." 280 Ga. at 10.

Georgia's Legislature is not alone in enacting special venue provisions in its identity theft laws. The *Mayze* court cited 20 other states in which state legislatures have enacted similar special venue provisions. 280 Ga. at 5.

The State argues that the analysis in *Mayze* used to support the constitutionality of the Georgia statute supports the creation of this special venue rule that would allow prosecution in the victim's home county. (We say "special" rule because it would stand apart from the way we apply our venue statute in cases such as the burglary case we discussed earlier.) We do not take the path of judicially creating such a special venue rule. We leave that to our legislature.

We find no error in the district court's determination that Ellis County was not the proper venue for the State to prosecute Coty for this crime.

Affirmed.