(274 P.3d 662)
No. 105,880

STATE OF KANSAS, *Appellee*, v. DEBRA K. WOMELSDORF, *Appellant*.

Opinion filed April 12, 2012.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Kristafer Ailslieger*, deputy solicitor general, for appellee.

Before ARNOLD-BURGER, P.J., Malone and HILL, JJ.

MALONE, J.: Debra K. Womelsdorf appeals her convictions of arson and committing a fraudulent insurance act. Womelsdorf claims: (1) there was insufficient evidence to support both convictions; (2) the district court committed reversible error in the procedure it followed in responding to a jury question during deliberations; (3) the district court committed reversible error when it accepted the jury's verdict without inquiring into the accuracy of the verdict; and (4) the district court committed reversible error by improperly instructing the jury on reasonable doubt. For the reasons set forth herein, we affirm the district court's judgment.

On September 9, 2009, at approximately 10 p.m., Krystal Stahl, a 911 dispatcher for Anderson County, received an emergency call from a woman who said her name was Debbie, but the woman could not provide her last name or address. The woman repeatedly asked for help and told Stahl that "they" had been holding her for 2 days. The first call was cut off, and approximately 2 minutes later, Stahl received a second call; this time, the woman gave a partial address and said her last name was Womelsdorf. As a result of the calls, Sergeant Shawn Chambers of the Anderson County Sheriff's Office was dispatched to Debra Womelsdorf's home.

When Chambers arrived at Womelsdorf's home, he found a truck on fire; the truck was parked with its rear bumper touching the porch of the house. Chambers called the fire department and walked around the house to assess the situation. On the east side of the house, Chambers found Womelsdorf lying on a pile of pillows and blankets approximately 6 to 10 feet from the house. Womelsdorf had a piece of rope around her wrist and seemed hysterical. Chambers helped Womelsdorf away from the house. During this process, the fire spread from the truck to the house. Womelsdorf was taken to a hospital for examination.

While at the hospital, Womelsdorf met with Kansas Bureau of Investigation Agent Jeff Hupp and Detective Vern Valentine of the Anderson County Sheriff's Office. Womelsdorf told Hupp and Valentine that while in bed the previous night, she heard a noise at the screen door, so she picked up a baseball bat and went to the door. There were two men outside, who identified themselves as friends of Wolmesdorf's son, Dakota Ramsey, who did not live with Womelsdorf at the time. Womelsdorf opened the door, and the men shoved her to the floor. The men took the baseball bat from her, struck her several times in the head, and ultimately tied her to the bed in her bedroom. Womelsdorf told Hupp and Valentine that the men said they had seen her getting gas at a convenience store and came to her house to rob her.

Womelsdorf also told Hupp and Valentine that the two men kept her tied to the bed except when they allowed her to get up to use the bathroom. Womelsdorf stated that the men sometimes left her unattended but tied to the bed while they drank and watched tel-

evision in another room. The men searched Womelsdorf's home for money, rummaging through her drawers and drinking whiskey and beer. The men also hit Womelsdorf with either a tire iron or crowbar that they had brought with them and threatened her with a gun.

According to Womelsdorf, the following morning, the men were hungry and she did not have any food in the house, so they forced her to drive to a convenience store and to the Dollar General Store in Iola. One of the men hid in the back of her truck and threatened to kill Ramsey if Womelsdorf told anyone what was happening. Womelsdorf purchased cigarettes at the convenience store, and she purchased a loaf of bread and some allergy medicine at the Dollar General Store. After returning to the house, the men again tied Womelsdorf to the bed, ate sandwiches, and continued drinking.

On one occasion when Womelsdorf was in the bathroom, the men discovered some money under her bed. Angry because she had lied about not having any money, the men kicked her and hit her with a crowbar. When the men decided to leave, they took the keys to her truck, backed the truck up to the porch, and lit the truck on fire. Womelsdorf told Hupp and Valentine that she realized there was a fire and cut herself free from the bed using a pocketknife she had hidden in her pants pocket. She went to Ramsey's bedroom, turned on her cell phone, and called 911. Womelsdorf then threw some of Ramsey's pillows, blankets, and other belongings out the window and escaped out the window herself.

The day after the fire, Valentine and Nancy Thomas, an investigator for the Kansas State Fire Marshal's Office, searched Womelsdorf's house and collected physical evidence. Valentine later testified that the refrigerator in the house was "completely full" of food. Thomas photographed the interior and exterior of the house and later testified that the bed to which Womelsdorf stated she had been tied did not have any indentations, as she would expect if someone had been tied to it for a long period of time, nor was the mattress disturbed, as if someone had looked under it. Thomas also testified that she did not find any rope on the bedpost and that the fire would not have been hot enough to destroy rope. In addition, Thomas found $2 in currency in plain sight, a gun behind

the bedroom door, and five cell phones inside the bureau. Thomas made test calls and two of the cell phones were activated. The investigators did not find any whiskey bottles, beer cans, or beer bottles inside the house.

On October 22, 2009, Womelsdorf completed and submitted a sworn "Proof of Loss" statement to Farm Bureau Mutual Insurance Company (Farm Bureau). Womelsdorf completed the statement in the office of Keith Renz, a property claims adjuster for Farm Bureau in Olathe, Kansas. The sworn statement was signed by Womelsdorf and stated that the loss "did not originate by any act, design or procurement on the part of the insured, or this affiant." The total amount of the claimed loss was $177,752.42.

On December 9, 2009, Womelsdorf was deposed at the Farm Bureau office in Garnett, Kansas, in connection with her insurance claim. The story Womelsdorf told at the deposition differed from her statement to Hupp and Valentine. In her deposition, Womelsdorf added new details about the alleged kidnapping incident: (1) The two men at Womelsdorf's door stated they needed a ride because their truck had broken down; (2) the men told Womelsdorf they were looking for money from the Sale Barn, an auction house and restaurant where Womelsdorf had previously worked; (3) the men took $60 from her purse; (4) the men dragged Womelsdorf by her hair to the laundry room and forced her to show them how the washing machine worked because they were wet and dirty and wanted to wash their clothes; and (5) the men threw boots and shoes at Womelsdorf 5 to 10 times and hit her in the stomach and shins. Womelsdorf also stated in the deposition that she owned her home and had a mortgage through Garnett State Bank with an outstanding balance of approximately $62,000.

On April 20, 2010, the State charged Womelsdorf with one count of arson. On June 24, 2010, the State filed an amended complaint also charging Womelsdorf with one count of committing a fraudulent insurance act and one count of making a false information. A jury trial commenced on December 15, 2010. Stahl testified for the State and played recordings of the two 911 calls. Chambers also testified for the State and showed the jury the video recorded by the camera in his patrol vehicle, which showed Womelsdorf's

burning truck and, eventually, her burning house. The State also admitted the photographs Chambers took on the night of the fire, including photographs of the burning truck, the blankets and pillows on which he found Womelsdorf, the house after it caught fire, a gas can found in the front seat of the truck after the fire department extinguished the fire, and the window through which Womelsdorf said she escaped.

The State presented the testimony of Dr. Lynne Holz, who examined Womelsdorf at the hospital on the night of the fire. Holz testified that the injuries she found on Womelsdorf were not consistent with her story that she had been struck by a baseball bat on the left side of her body. Holz also testified that she saw no physical evidence of ligature marks. The State admitted photographs of Womelsdorf taken at the hospital that night. The State also called Hupp and Valentine, both of whom testified about their conversation with Womelsdorf at the hospital the night of the fire. Thomas also testified for the State, explaining inconsistencies between Womelsdorf's story and the findings she made when she investigated Womelsdorf's home the day after the fire. In addition, Thomas testified that the fire in the truck was started by a person who poured gasoline into the interior of the truck and lit it on fire.

The State also called Raymond Hess, the owner of the convenience store Womelsdorf visited on the morning of September 9, 2009. Hess reviewed his surveillance camera footage for the day in question, and a copy of the footage was admitted into evidence and played for the jury. The video showed Womelsdorf coming into the convenience store, purchasing cigarettes from Hess, and leaving. Just prior to Womelsdorf entering the store, another man entered and, when Womelsdorf left, she passed another man on his way into the store. Likewise, David Hines, the district manager for the Iola Dollar General Store testified and the jury saw footage from the surveillance camera in that store. The video showed Womelsdorf entering the store, purchasing some bread and allergy medicine, and leaving. Brenda Kern, the store manager who rang up Womelsdorf's purchase, testified that Womelsdorf said "somebody was sick and she had to get some medicine and that's about it."

Finally, the State called Keith Renz, the property claims adjuster for Farm Bureau. Renz testified that Womelsdorf originally reported that someone broke into her house and ran a truck into the house on September 9, 2009. The State admitted the sworn proof of loss statement that Womelsdorf completed in Renz' office in Olathe, Kansas, on October 22, 2009. Renz testified that when he met with Womelsdorf during the investigation of the fire, Womelsdorf told him she that she had $300 in her bank account and that $1,600 had been stolen from her. Womelsdorf also told Renz that she was not behind on any payments except for some credit card bills she was disputing. The State then introduced bank records, showing the lien on Womelsdorf's house held by Garnett State Bank and a notice of late payment in February 2009.

At the end of the State's case, the district court dismissed the charge of making a false information. Womelsdorf did not present any witnesses or offer any evidence, relying on the theory that she was a victim of kidnapping, not an arsonist. After deliberating, the jury found Womelsdorf guilty of arson and committing a fraudulent insurance act. On January 19, 2011, the district court sentenced Womelsdorf to a controlling sentence of 18 months' imprisonment and placed her on probation for 24 months. Womelsdorf timely appealed her convictions.

SUFFICIENCY OF THE EVIDENCE TO SUPPORT ARSON CONVICTION

Womelsdorf claims the evidence was insufficient to support her conviction of arson. In essence, Womelsdorf argues that the State's theory of arson did not make sense and that if Womelsdorf wanted to commit arson, she would not have presented such a complex story to law enforcement. Womelsdorf asserts that if her intent was to burn her house, she would have started a fire in the house before calling 911 rather than starting a fire in the truck. Womelsdorf contends that she had no intent to burn her house and she did not commit arson as charged.

" ' "When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational

factfinder could have found the defendant guilty beyond a reasonable doubt." ' [Citation omitted.]" *State v. McCaslin*, 291 Kan. 697, 710, 245 P.3d 1030 (2011).

The complaint alleged that Womelsdorf "did unlawfully, and knowingly, by means of fire or explosive, damage any building or property, to-wit: home, automobile & contents of home which is a dwelling with intent to injure or defraud an insurer or lienholder, in violation of K.S.A. 21-3718(a)(1)(B)." As stated above, Womelsdorf argues that the State's explanation was not "the most effective way" for Womelsdorf to destroy her home and collect insurance money. Womelsdorf argues that the more reasonable inference is that she did not intend to damage her home, automobile, or the contents of her home by fire, nor did she intend to defraud an insurer or lienholder. But as our Supreme Court has stated:

"[O]ur function in reviewing evidence sufficiency is not to select the inference which we find most compelling, but to view the evidence in a light most favorable to the prosecution. We permit a factfinder to infer the existence of a material fact from circumstantial evidence, even though the evidence does not exclude every other reasonable conclusion or inference. [Citation omitted.] Moreover, a conviction of even the gravest offense may be sustained by circumstantial evidence. [Citation omitted.]" *State v. Scaife*, 286 Kan. 614, 618-19, 186 P.3d 755 (2008).

Here, one of the reasonable conclusions or inferences the jury could have drawn from the evidence presented was that Womelsdorf's explanation involving two men who held her hostage and ultimately started the fire was untrue and that Womelsdorf herself started the fire with the intent to collect money from her insurance company. As the State notes in its brief, there were numerous inconsistencies between Womelsdorf's statements and the physical evidence was not entirely consistent with her story. For example, Womelsdorf stated in a police interview that her captors tied her to the bed, yet Thomas, the fire investigator, testified that there was no sign that anyone had been tied to the bed. In addition, Womelsdorf stated that her captors hit her repeatedly with a baseball bat and a crow bar, yet Holz, the doctor who examined her at the hospital, found very few scrapes and bruises and testified that Womelsdorf's injuries were not consistent with being hit with a baseball bat. Holz also testified that he saw no physical evidence of ligature marks. Finally, the evidence showed that Womelsdorf

was late with her mortgage payments. Considering the evidence in the light most favorable to the State, we conclude there was sufficient evidence for the jury to convict Womelsdorf of arson.

## SUFFICIENCY OF THE EVIDENCE TO SUPPORT CONVICTION OF A FRAUDULENT INSURANCE ACT

Next, Womelsdorf claims there was insufficient evidence to support her conviction of committing a fraudulent insurance act. Womelsdorf argues: (1) The jury could not properly convict her because the date of the alleged crime given in the jury instruction—October 22, 2009—did not match the date in the complaint; and (2) the jury could not properly convict her because it was instructed that the act occurred in Anderson County, and the evidence did not support such a finding.

Womelsdorf was charged with committing a fraudulent insurance act in violation of K.S.A. 2010 Supp. 40-2,118(a). This statute defines a fraudulent insurance act as:

"[A]n act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto."

The district court instructed the jury that to establish the charge of fraudulent insurance act, the State needed to prove:

"1. That the defendant presented a written statement as part of, or in support of, a claim for payment or other benefit pursuant to an insurance policy for personal insurance covering her home, automobile and contents of her home;

"2. That the defendant knew such statement to contain materially false information concerning any fact material thereto;

"3. That the defendant intended to defraud; and

"4. That this act occurred on or about the 22nd day of October, 2009, in Anderson County, Kansas."

Womelsdorf first contends that the conviction must be reversed because the alleged date of the crime differed between the com-

plaint and the jury instruction. The original complaint, filed on April 20, 2010, charged Womelsdorf with one count of arson. On June 24, 2010, the State filed a first amended complaint, charging Womelsdorf with one count of arson; one count of committing a fraudulent insurance act between the 9th and 22nd of September, 2009; and making a false information. On December 17, 2010, the State again moved to amend the complaint to change the date of the fraudulent insurance act to October 22, 2009. Defense counsel stated he had no objection to the amendment, and the district court granted the motion on the record. Thus, the complaint was amended to include a date of October 22, 2009, for the charge of committing a fraudulent insurance act, and this was the date given in the jury instructions. Therefore, because there was no discrepancy in dates, this portion of Womelsdorf's argument fails.

Next, Womelsdorf argues that her conviction must be reversed because the complaint and the jury instructions required the State to show that the act occurred in Anderson County, Kansas, but there was insufficient evidence to support that finding; rather, all the evidence showed that the allegedly fraudulent insurance act was committed in Johnson County, Kansas. Although Womelsdorf argues insufficiency of the evidence, she is essentially claiming the district court did not have jurisdiction to convict her of this offense. The "element" that Womelsdorf attacks as being unsupported by the evidence is the venue element of the crime. See *State v. Rivera*, 42 Kan. App. 2d 1005, 1008-10, 219 P.3d 1231 (2009), *rev. denied* 290 Kan. 1102 (2010) (noting that venue is not strictly an element of the crime as defined by statute).

Although Womelsdorf did not raise the issue of venue to the district court, this court may address the issue for the first time on appeal. In *State v. McElroy*, 281 Kan. 256, 264, 130 P.3d 100 (2006), the Kansas Supreme Court stated:

"We note that the defendant's failure to object to venue at trial is irrelevant because venue is a matter of jurisdiction. Lack of jurisdiction is not a waivable defense and may be raised for the first time on appeal. [Citations omitted.] Although venue is a question of fact to be determined by the jury, the existence of jurisdiction is a question of law over which this court's scope of review is unlimited. [Citations omitted.]"

As stated above, the jury was instructed that to establish the charge of fraudulent insurance act the State needed to prove that the act occurred on or about October 22, 2009, in Anderson County, Kansas. Womelsdorf contends that because "the gravamen of this crime is the presentation of a written [insurance] statement," venue is proper only in the county in which the fraudulent insurance statement was completed and submitted. The evidence regarding the fraudulent insurance statement consisted of the testimony of Renz, the property claims adjuster for Farm Bureau, and the sworn proof of loss statement executed by Womelsdorf. Renz testified that Womelsdorf completed and submitted the sworn proof of loss statement in his office in Olathe, Kansas. The sworn statement was signed by Womelsdorf and stated that the loss "did not originate by any act, design or procurement on the part of the insured, or this affiant." Based on the evidence, Womelsdorf argues that the proper venue for the offense of committing a fraudulent insurance act was only in Johnson County and not Anderson County.

Under K.S.A. 22-2602, "[e]xcept as otherwise provided by law, the prosecution shall be in the county where the crime was committed." However, K.S.A. 22-2603 provides: "Where two or more acts are requisite to the commission of any crime and such acts occur in different counties the prosecution may be in any county in which any of such acts occur." The State argues that the arson was requisite to the commission of the fraudulent insurance act; without the arson, Womelsdorf's statements in the sworn proof of loss were not fraudulent. Therefore, because the arson occurred in Anderson County, the State argues that venue was proper in Anderson County.

Our Supreme Court addressed a similar venue issue in *State v. Boorigie*, 273 Kan. 18, 41 P.3d 764 (2002). In *Boorigie*, the defendant's wife was found dead in Montgomery County, and the defendant was arrested and charged in that county with first-degree murder and other felony offenses. While awaiting trial, the defendant was held in jails in Montgomery County, Linn County, and Elk County. Two inmates at the Elk County jail later testified that the defendant offered them each $50,000 to find someone to

confess to the murder. A corrections officer also testified that he met with the defendant in Wilson County, and the defendant offered him $10,000 to find someone to confess to the murder. As a result of these conversations, the defendant was also charged and convicted in Montgomery County with three counts of criminal solicitation based on the testimony of the two inmates and the corrections officer.

On appeal, the defendant contended that venue for the three counts of criminal solicitation was in Elk and Wilson Counties because the acts of solicitation occurred only in those counties; therefore, the charges were improperly filed in Montgomery County and the district court did not have jurisdiction to convict him of the charges. Our Supreme Court disagreed and determined that under K.S.A. 22-2603, the first-degree murder charge in Montgomery County was requisite to the criminal solicitation that occurred in Elk and Wilson Counties; thus, venue for the criminal solicitation charges was proper in Montgomery County. 273 Kan. at 23-25. After citing other prior cases in which crimes in one county were requisite to crimes committed in another county, the court stated:

"Similarly, in this case, Montgomery County was the county where the defendant faced the original charges and it was the place in which the crimes the defendant solicited false testimony for were committed. . . . [T]he subsequent criminal charges were a direct outgrowth of the original charges committed in the county ultimately exercising jurisdiction to try the defendant[]. . . . Boorigie's efforts to find someone to falsely testify were for the sole purpose of avoiding prosecution in Montgomery County. . . . [C]onsidering the direct link between the Montgomery County criminal charges and the crimes committed in Elk and Wilson Counties, it is logical that Montgomery County was a proper venue for the prosecution of the defendant's solicitation for false testimony" 273 Kan. at 24-25.

Similarly, Anderson County is where Womelsdorf faced the original arson charge. The insurance statement submitted by Womelsdorf stemmed from the fire that occurred in Anderson County. As the State argues, if the fire was not arson, the sworn insurance statement was not fraudulent; thus, without the arson in Anderson County, the insurance claim in Johnson County was not criminal. Stated differently, the arson in Anderson County was requisite to the fraudulent insurance act in Johnson County. Under K.S.A. 22-

2603 and the rationale of *Boorigie*, venue was proper in Anderson County.

## RESPONSE TO JURY QUESTION DURING DELIBERATIONS

Next, Womelsdorf claims the district court committed reversible error when in response to a jury question submitted during deliberations, the district court responded in writing rather than calling the jury into the courtroom to communicate the answer. During deliberations, the jury sent a note to the judge that stated: "We the jury would like to obtain a written transcript of the Womelsdorf interview conducted by Jeff Hupp and Vernon Valentine on 9/9/09 at [Anderson County Hospital]" and "[w]e would like to see a diagram of the home layout as well." The judge read the requests on the record, in the courtroom, and the judge and both counsel discussed how to respond to the questions. Womelsdorf does not contend that she was not present in the courtroom for this discussion. Both counsel acknowledged that a transcript of the interview was not available and that a diagram of the residence had not been admitted into evidence.

The judge suggested that the appropriate response was to inform the jury that the requested documents were not available and that the jury must consider only the evidence admitted during the trial. Womelsdorf's counsel replied, "That's what I would prefer to do." The judge prepared a written answer to the jury question that stated: "A transcript of the Womelsdorf interview and a diagram of the home [are] not available. You must consider only the evidence admitted during the trial." The judge asked if either party had a problem with the answer, and Womelsdorf's counsel stated, "That's fine." The bailiff then delivered the written answer to the jury in the jury room. Neither party objected to the procedure followed by the district court in responding to the jury question.

Womelsdorf now asserts that the district court's procedure of sending a written response to the jury question was contrary to K.S.A. 22-3420(3) and violated numerous constitutional rights. Moreover, Womelsdorf asserts that responding to the jury's question in writing could not be harmless because it was structural error and the cumulative effect of the error denied her a fair trial and

requires this court to reverse her convictions. The State argues that because Womelsdorf did not raise these issues before the district court, she may not raise them for the first time on appeal. In the alternative, the State argues that the district court's procedure of sending a written response to the jury question was not erroneous and, even if it was error, it was harmless beyond a reasonable doubt.

Resolution of this issue requires statutory and constitutional interpretation. This presents a question of law over which appellate courts have unlimited review. *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010).

As a threshold matter, the State correctly asserts that Womelsdorf is raising this issue for the first time on appeal. Womelsdorf did not object to the district court's written response to the jury question, nor did she challenge the district court's procedure in responding to the question in writing rather than calling the jury into the courtroom to communicate the answer. Generally, issues not raised before the district court cannot be raised on appeal. *State v. Warledo*, 286 Kan. 927, 938, 190 P.3d 937 (2008). There are exceptions to this general rule, but Womelsdorf does not argue that any exceptions apply. Even trial errors affecting constitutional rights may be waived in the absence of a proper, timely objection. See *State v. Gant*, 288 Kan. 76, 82, 201 P.3d 673 (2009).

Although Womelsdorf arguably failed to preserve this issue for appeal, we note that the Kansas Supreme Court has previously addressed an identical issue for the first time on appeal in *State v. Bell*, 266 Kan. 896, 918-20, 975 P.2d 239, *cert. denied* 528 U.S. 905 (1999). In *Bell*, the jury sent a note to the district judge during deliberations asking for further information about the jury instructions. The district court consulted with both attorneys, but the record on appeal did not show that the defendant was present during the discussion, nor did it show that he voluntarily waived his right to be present. After hearing the attorneys' positions, the district court prepared a written answer to the question, which was delivered to the jury outside the courtroom. Although the defendant objected to the substance of the district court's answer to the jury question, the defendant did not object to the procedure fol-

lowed by the district court in responding to the question. But on appeal, the defendant argued the district court erred by responding to the jury question outside the presence of the defendant.

The *Bell* court addressed the defendant's argument and determined that the procedure adopted by the district court in responding to the jury question was contrary to K.S.A. 22-3420(3) and violated the defendant's constitutional right to be present at every critical stage of the trial. However, the Supreme Court noted that the district court's response to the jury question was an accurate statement of the law and concluded that the error was harmless. 266 Kan. at 919-20; see also *State v. Brown*, 272 Kan. 809, 812-13, 37 P.3d 31 (2001) (identical issue addressed for the first time on appeal); *State v. Coyote*, 268 Kan. 726, 731-35, 1 P.3d 836 (2000) (same result). Because our Supreme Court has previously addressed this issue for the first time on appeal, we will address the merits of Womelsdorf's claim. But see *State v. Groschang*, 272 Kan. 652, 672-73, 36 P.3d 231 (2001) (time-honored rule that an issue not raised in district court may not be raised for the first time on appeal applies to jury requests under K.S.A. 22-3420[3]).

Womelsdorf argues that the district court's procedure of submitting a written answer to the jury question was contrary to K.S.A. 22-3420(3), which provides:

"After the jury has retired for deliberation, if they desire to be informed as to any part of the law or evidence arising in the case, they may request the officer to conduct them to the court, where the information on the point of law shall be given, or the evidence shall be read or exhibited to them in the presence of the defendant, unless he voluntarily absents himself, and his counsel and after notice to the prosecuting attorney."

In *Bell*, our Supreme Court stated:

"The correct procedure for a trial court to follow when answering a question from a deliberating jury is set forth in K.S.A. 22-3420(3). [Citation omitted.] K.S.A. 22-3420(3) requires that once the jury has begun deliberations, any questions from the jury concerning the law or evidence pertaining to the case must be answered in open court in the defendant's presence, unless the defendant is absent voluntarily. [Citation omitted.]

"K.S.A. 1998 Supp. 22-3405, as well as the Sixth Amendment's Confrontation Clause and the Due Process Clause of the Fourteenth Amendment, require the defendant's presence at every critical stage of the trial. [Citations omitted.] This

includes all times when the jury is present in the courtroom and whenever the trial court communicates with the jury. [Citation omitted.]" 266 Kan. at 919-20.

*Bell* is distinguishable from the facts herein. In *Bell*, the defendant was not present when the district court consulted with the attorneys and formulated a response to the jury question. Here, Womelsdorf does not contend that she was not present in the courtroom for this discussion. Womelsdorf's only complaint is that the jury was not ushered back into the courtroom to hear the district court's response to the question in the defendant's presence. Nevertheless, *Bell* states that a question from the jury during deliberations "must be answered in open court in the defendant's presence" and that the defendant must be present "whenever the trial court communicates with the jury." See also *State v. Murdock*, 286 Kan. 661, 683, 187 P.3d 1267 (2008) (quoting language from *Bell*); *Brown*, 272 Kan. at 812 (same language); *Coyote*, 268 Kan. at 732 (same language).

Under the Kansas Supreme Court's interpretation of K.S.A. 22-3420(3), once the jury has begun deliberations, any questions from the jury concerning the law or evidence pertaining to the case must be answered in open court in the defendant's presence, unless the defendant is absent voluntarily. The best procedure for answering a jury question during deliberations is for the district court to bring the jury into the courtroom and provide the answer in the defendant's presence. Here, the district court failed to follow this procedure. But even if Womelsdorf is correct in asserting that the district court's procedure in responding to the jury question violated K.S.A. 22-3420(3), our Supreme Court in *Bell* determined that such a violation is subject to harmless error analysis. Under the harmless error standard of K.S.A. 60-261, the test is whether the error affected a party's substantial rights; in other words, the question is whether the error affected the outcome of the trial. *State v. Ward*, 292 Kan. 541, 565, 256 P.3d 801 (2011), *cert. denied* February 21, 2012. For a constitutional error, a court must find beyond a reasonable doubt that there was no impact on the trial's outcome. In other words, the court must find there is no reasonable possibility that the error contributed to the verdict. 292 Kan. at 568-69.

Here, there was no reasonable possibility that the error, if one occurred, contributed to the verdict. The district court's response to the jury question did not misstate the law or the evidence. Instead, the answer merely informed the jury that the requested documents were not available and the jury must consider only the evidence admitted during the trial. Essentially, the district court's response restated an instruction that initially had been provided to the jury. The answer did not provide any additional information which could have changed the jury's verdict. Furthermore, the answer did not place undue emphasis on whether the jury should find Womelsdorf guilty or not guilty. We conclude beyond a reasonable doubt that the district court's procedure of submitting the answer in written form rather than calling the jury into the courtroom had no impact on the outcome of the trial. Under the facts of this case, any error by the district court in not following the procedure set forth in K.S.A. 22-3420(3) was harmless.

Next, Womelsdorf argues that her fundamental right to an impartial judge was violated by sending the written answer to the jury. According to Womelsdorf, the communication between the judge and jury was not complete until the jury received the written answer to its question. If no judge was present when the jury received the written answer, then no impartial judge was present, and Womelsdorf argues that this procedure violated her right to an impartial judge under the Fourteenth Amendment to the United States Constitution. See *Ward v. Village of Monroeville*, 409 U.S. 57, 59-60, 93 S. Ct. 80, 34 L. Ed. 2d 267 (1972) (detailing the right to an impartial judge). Womelsdorf correctly states that the lack of an impartial judge is considered a structural error and is therefore not subject to the harmless error rule. *Arizona v. Fulminante*, 499 U.S. 279, 308 & n.8, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991).

Womelsdorf compares the instant case to *State v. Brown*, 362 N.J. Super. 180, 827 A.2d 346 (2003). During the jury's deliberations in *Brown*, the jurors requested a readback of the victim's testimony. Although the defendant objected, the district judge ordered that the readback occur in the jury room, with counsel present, but without the judge or the defendant present. Moreover, prior to the readback, the district judge went into the jury room

with the jury but outside the presence of counsel and the defendant and instructed the jurors that they could take notes on the readback but not to discuss the readback in front of counsel.

On appeal, the Superior Court of New Jersey, Appellate Division, held that the readback of testimony was a "critical stage of the criminal proceedings"; that a defendant has a right to be present; and that the readback must be conducted in open court, on the record, and under the supervision of the presiding judge. 362 N.J. Super. at 182, 188-89. The court stated that it found the readback to be a critical stage of the proceedings because "[i]t is furnishing [jurors] with information they need to decide the case." 362 N.J. Super. at 188-89. The court concluded that the district court denied the defendant his right to be present at the critical stage and, by barring the public, also denied the defendant his right to a public trial. 362 N.J. Super. at 189. Accordingly, the court reversed the defendant's convictions and remanded for a new trial. 362 N.J. Super. at 189-90.

The result in *Brown* was based primarily on violations of the defendant's constitutional right to be present at each critical stage of the trial and also the right to a public trial, rather than on the defendant's constitutional right to an impartial judge. Moreover, the facts of *Brown* are clearly distinguishable from Womelsdorf's case. The *Brown* court determined that the readback was a critical stage of the proceeding because it furnished the jurors with information they needed to decide the case. Here, the written answer to the jury denied it additional information it was seeking and reminded the jury to consider only the evidence admitted during trial. As the State points out, there is a distinct difference between the lengthy process of a readback, which also necessarily involves the court reporter, and the process of delivering a short written answer to a jury question which does not provide additional information. Under the facts of this case, we conclude that the district court's procedure in responding to the jury question in writing did not violate Womelsdorf's constitutional right to an impartial judge.

Womelsdorf also argues that the district court's procedure in responding to the jury question in writing violated her right to a public trial as guaranteed by the Sixth Amendment to the United

States Constitution and § 10 of the Kansas Constitution Bill of Rights. Womelsdorf's argument is again based on her contention that the communication with the jury was not effective until the jury received the written answer in the jury room. Womelsdorf argues that when "the court's communication with the jury occurs in the jury room, a place where the public cannot go, a critical stage of the trial is occurring without any opportunity of observation by members of the public." Womelsdorf argues that a violation of her right to a public trial constitutes structural error and is not subject to harmless error analysis. See *Waller v. Georgia*, 467 U.S. 39, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984) (denial of constitutional right to public trial constitutes structural error).

As stated above, the judge read the jury questions on the record, in the courtroom, and the judge and both counsel discussed how to respond to the questions. Womelsdorf does not contend that she was not present in the courtroom for that discussion or that the courtroom was not open to the public when the discussion took place. Nothing about the district court's written response to the jury question, which is now available to the public as part of the court file, was hidden from public view. Obviously, the public was not present when the bailiff delivered the written response to the jury room, but jury deliberations are never open to the public. Under the facts of this case, we conclude that the district court's procedure in responding to the jury question in writing did not violate Womelsdorf's constitutional right to a public trial.

Finally, as part of this issue, Womelsdorf argues that this court should reverse due to cumulative error. Even if an individual error is insufficient to support reversal, the cumulative effect of multiple errors may be so great as to require reversal. The test is " 'whether the totality of circumstances substantially prejudiced the defendant and denied the defendant a fair trial. No prejudicial error may be found upon this cumulative effect rule, however, if the evidence is overwhelming against the defendant.' [Citation omitted.]" *State v. Edwards*, 291 Kan. 532, 553, 243 P.3d 683 (2010). But at best, Womelsdorf has established a statutory violation in the procedure followed by the district court in responding to the jury question. However, the test for cumulative error is whether the totality of

circumstances substantially prejudiced the defendant and denied the defendant a fair trial. As discussed above, Womelsdorf was not prejudiced by the district court's actions. Therefore, her cumulative error claim fails.

## PROCEDURE FOR ACCEPTING JURY VERDICT

Next, Womelsdorf claims the district court committed reversible error when it accepted the jury's verdict without inquiring into the accuracy of the verdict. Womelsdorf argues that the procedure followed by the district court in accepting the jury verdict was contrary to K.S.A. 22-3421. The State responds that Womelsdorf failed to object and therefore cannot raise the issue on appeal. The State also argues that Womelsdorf's failure to establish prejudice means that any error by the district court was harmless. Finally, the State alleges that Womelsdorf waived her right to challenge the unanimity of the verdict when she declined to poll the jury.

Interpretation of a statute is a question of law over which appellate courts have unlimited review. *Arnett*, 290 Kan. at 47. Furthermore, appellate courts exercise de novo review over issues of jury unanimity. *State v. Dayhuff*, 37 Kan. App. 2d 779, 784, 158 P.3d 330 (2007).

Here, when the jury delivered its verdict, the following exchange occurred:

"THE COURT: . . . It's my understanding the jury has reached a verdict.

"[Jury Foreman]: Yes, Your Honor, we have. *The verdict was by all 12 of the jurors unanimously.*

"THE COURT: Okay. If you can hand the verdict forms to the bailiff.

"THE COURT: The verdict form reads as follows: Verdict Count 1—'We the jury, find the defendant, Debra Kay Womelsdorf, guilty of the crime of arson of a home, automobile and contents of a home.' Signed presiding juror.

"Verdict Count 2. 'We the jury, find the defendant, Debra Kay Womelsdorf, guilty of the crime of fraudulent insurance act.' Again signed by the presiding juror.

"Does either party wish to have the jury polled regarding the verdict?

"MR. LOWRY [defense counsel]: No, Your Honor.

"MR. CAMPBELL [prosecutor]: No, Your Honor." (Emphasis added.)

K.S.A. 22-3421 sets forth the procedure for the district court to accept a jury verdict in a criminal case and provides:

"The verdict shall be written, signed by the presiding juror and read by the clerk to the jury, and *the inquiry made whether it is the jury's verdict*. If any juror disagrees, the jury must be sent out again; but if no disagreement is expressed, and neither party requires the jury to be polled, the verdict is complete and the jury discharged from the case. If the verdict is defective in form only, it may be corrected by the court, with the assent of the jury, before it is discharged." (Emphasis added.)

K.S.A. 22-3421 requires a trial judge to follow two separate steps in accepting a jury verdict. First, the trial judge shall inquire whether the verdict read in open court is the jury's verdict. Second, the trial judge must poll the jury if either party requests that the jury be polled. At Womelsdorf's trial, the judge complied with the second step of K.S.A. 22-3421 by asking both counsel if they desired to have the jury polled. However, the judge failed to satisfy the first step by inquiring whether the verdict read in open court was the jury's verdict. Womelsdorf argues that the trial judge's failure to fully comply with the statute constituted reversible error.

Womelsdorf admits that her trial counsel did not object to the district court's failure to inquire into the accuracy of the verdict. As she points out, however, there are exceptions to the general rule that an issue not raised at trial may not be raised on appeal. These exceptions include where the newly asserted theory involves only a question of law arising on proven or admitted facts and is finally determinative of the case and when consideration of the theory is necessary to serve the ends of justice or prevent a denial of fundamental rights. See *State v. Dukes*, 290 Kan. 485, 488, 231 P.3d 558 (2010). Womelsdorf asserts that both exceptions apply here because the facts are not in dispute, the issue may be finally determinative of the case, and the issue is a question of law pertaining to the fundamental right to a unanimous jury verdict.

The State disagrees, citing *State v. Holt*, 285 Kan. 760, 766-67, 175 P.3d 239 (2008), in which our Supreme Court refused to consider on the merits a jury-polling challenge that allegedly violated K.S.A. 22-3421. The *Holt* court noted that the right to a unanimous jury is a statutory right, not a constitutional right. 285 Kan. at 766. The court also noted the difficulties an appellate court faces when a defendant fails to raise concerns about the verdict at the time of

the verdict, *i.e.*, it prevents a district court from "having any chance to cure any alleged defect in the polling before the jury [is] discharged." 285 Kan. at 768-69. The defendant in *Holt* asked our Supreme Court to consider his argument for the first time on appeal to serve the ends of justice, as Womelsdorf asks here. The *Holt* court declined to do so because the defendant "failed to show that the polling procedure . . . actually harmed him" and there was no evidence suggesting that the defendant received anything less than a unanimous verdict. 285 Kan. at 770. The court concluded by stating that because the defendant "did not timely object to the polling, he did not preserve this issue for appeal." 285 Kan. at 771.

Womelsdorf compares this case to *State v. Johnson*, 40 Kan. App. 2d 1059, 198 P.3d 769 (2008), in which this court considered an identical issue for the first time on appeal and found that the district court's failure to inquire into the accuracy of the jury verdict constituted reversible error. In *Johnson*, this court acknowledged our Supreme Court's holding in *Holt* and distinguished the case before it by noting that the record on appeal in *Johnson* called into question the unanimity of the jury through posttrial affidavits from jurors stating they did not feel the verdict was correct and unanimous. 40 Kan. App. 2d at 1079. Under the circumstances in *Johnson*, this court found that it could not say that the defendant was not prejudiced by the district court's failure to inquire into the accuracy of the verdict as required by K.S.A. 22-3421; therefore, the failure was reversible error. 40 Kan. App. 2d at 1081.

The facts before this court are more similar to those in *Holt* than in *Johnson*. Here, the district court instructed the jury that the verdict must be unanimous. As in *Holt*, Womelsdorf has failed to show that the district court's failure to follow the statutory requirements of K.S.A. 22-3421 actually harmed her. Additionally, like the defendant in *Holt* and unlike the defendant in *Johnson*, Womelsdorf does not point to any part of the record on appeal that calls into question the unanimity of the verdict or the impartiality of the jury. In fact, when delivering Womelsdorf's verdict to the district court, the jury foreperson stated, "The verdict was by all 12 of the jurors unanimously." Although Womelsdorf correctly argues that the jury foreperson's statement does not satisfy the statutory re-

quirement that the district court must inquire into the accuracy of the verdict, the statement is strong evidence that the jury was unanimous in its verdict.

Although the precise issue in *Holt* was not the same as the issue before this court, the Supreme Court's language in that opinion provides this court with some authority to reject Womelsdorf's claim simply because she is raising the issue for the first time on appeal. Womelsdorf did not object when the district court failed to inquire about the jury's verdicts. Had Womelsdorf objected to the procedure, the district court certainly could have corrected its error. There is no evidence in the record suggesting that Womelsdorf received anything less than a unanimous verdict, and in fact, the record suggests the opposite.

Finally, we note that the propriety of addressing this issue for the first time on appeal has recently been reexamined by this court in *State v. Dunlap*, 46 Kan. App. 2d 924, 934, 266 P.3d 1242 (2011), *pet. for rev.* filed December 30, 2011 (pending). In *Dunlap*, this court held:

"[W]hen the trial judge in a criminal case explicitly asks the parties if they want to have the jury polled, which would accomplish the same purposes as having the trial judge inquire into the accuracy of the verdict, and the defendant declines the request for polling, the appellate court should not consider a challenge to the procedure for accepting the verdict for the first time on appeal based on concepts of waiver or invited error."

Here, unlike in *Johnson*, the district court explicitly asked the parties if they wanted to have the jury polled and Womelsdorf's counsel said no. Polling the jury would have achieved the purpose of ensuring Womelsdorf's statutory right to a unanimous verdict. Likewise, polling the jury would have safeguarded the concept of finality with respect to the jury verdict. By polling the jury, each juror would have been given the opportunity to express disagreement with or dissent from the verdict in open court. Because Womelsdorf declined the district court's explicit request to have the jury polled, which would have accomplished the same purposes as having the district court inquire into the accuracy of the verdict, we conclude she is not allowed to challenge the procedure for accepting the verdict for the first time on appeal. Because we are not

reaching the merits of Womelsdorf's claim, we will not address the State's argument that any error was harmless.

### JURY INSTRUCTION ON REASONABLE DOUBT

Finally, Womelsdorf claims the district court committed reversible error by improperly instructing the jury on reasonable doubt. Womelsdorf did not raise this issue to the district court. Generally, issues not raised before the district court cannot be raised on appeal. *State v. Warledo,* 286 Kan. 927, 938, 190 P.3d 937 (2008). There are exceptions to this general rule, however, including when consideration of the theory is necessary to serve the ends of justice or to prevent a denial of fundamental rights. *Dukes,* 290 Kan. at 488. If the reasonable doubt instruction unconstitutionally diluted the State's burden of proof, the instruction impacted Womelsdorf's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and consideration of her argument is necessary to prevent a denial of those rights. See *Sullivan v. Louisiana,* 508 U.S. 275, 277-82, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993) (denial of the right to a jury trial by giving a defective reasonable doubt instruction constituted structural error requiring reversal of defendant's conviction).

Jury instructions in any particular case are to be considered together and read as a whole, and where they fairly instruct the jury on the law governing the case, error in an isolated instruction may be disregarded as harmless. If the instructions are substantially correct and the jury could not reasonably have been misled by them, the instructions will be approved on appeal. *State v. Hall,* 292 Kan. 841, 857, 257 P.3d 272 (2011). Where a defendant challenges a jury instruction on appeal but did not object at trial, an appellate court reviews the issue under the clearly erroneous standard. See K.S.A. 22-3414(3); *State v. Adams,* 292 Kan. 60, 75, 253 P.3d 5 (2011). " 'Instructions are clearly erroneous only if the reviewing court is firmly convinced there is a real possibility that the jury would have rendered a different verdict if the error had not occurred.' [Citations omitted.]" 292 Kan. at 75.

The jury instruction to which Womelsdorf now objects stated:

"The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find the defendant not guilty; if you have no reasonable doubt as to the truth of any of the claims required to be proved by the State, you should find the defendant guilty. Your verdict must be unanimous."

Womelsdorf's challenge to the jury instruction on reasonable doubt stems from the recent filing of an unpublished opinion by this court in *Miller v. State*, No. 103,915, 2012 WL 401601 (Kan. App. 2012) (unpublished opinion), *pet. for rev.* filed February 22, 2012. In *Miller*, the movant appealed the denial of a K.S.A. 60-1507 motion claiming ineffective assistance of counsel. Among other issues, Miller claimed the lawyer who handled his direct appeal was constitutionally deficient in failing to raise an issue based on the reasonable doubt jury instruction given at his trial. The jury instruction read:

" 'The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of *each* of the claims required to be proved by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of *any* of the claims required to be proved by the State, you should find the defendant guilty.' " 2012 WL 401601, at *2.

The instruction in *Miller* followed the Kansas pattern jury instruction, PIK Crim. 3d 52.02, except that it transposed the words "each" and "any." 2012 WL 401601, at *2. As the *Miller* court stated, the switch substantially changed the meaning of the jury instruction so that it "tells jurors they should acquit Miller only if they have reasonable doubt about each claim or element the State must prove. And it tells them they should convict Miller if they hold no reasonable doubt as to any of those claims." 2012 WL 401601, at *2. The *Miller* court found that this was a clear misstatement of the law and directly affected a fundamental constitutional right. 2012 WL 401601, at *5. Ultimately, the *Miller* court reversed the denial of the K.S.A. 60-1507 motion and remanded with directions to give the movant a new trial. 2012 WL 401601, at *9.

Womelsdorf argues that the same rationale applies here and her convictions must be reversed based on the reasonable doubt instruction given to the jury at her trial. However, Womelsdorf's reasonable doubt jury instruction was not identical to the jury instruction given by the district court in *Miller*. While the instruction in *Miller* transposed the words "any" and "each," Womelsdorf's instruction used the word "any" in both places, giving the test as follows:

"If you have a reasonable doubt as to the truth of *any* of the claims required to be proved by the State, you must find the defendant not guilty; if you have no reasonable doubt as to the truth of *any* of the claims required to be proved by the State, you should find the defendant guilty."

The *Miller* court addressed this situation in dicta because the State argued there that the district court orally instructed the jury using the word "any" in both places. 2012 WL 401601, at *6. The *Miller* court was troubled by this version of the reasonable doubt instruction, stating that the word "any" may mean "any one" or "every," depending on the context, and the court was concerned about ambiguity and possible confusion among the jurors. 2012 WL 401601, at *6. The *Miller* court concluded that even if the district court orally instructed the jury using the word "any" in both places, it would not have cured the constitutional defect in the written instruction, which plainly misstated the law. 2012 WL 401601, at * 6.

However, the *Miller* court did not cite to or discuss *State v. Beck*, 32 Kan. App. 2d 784, 88 P.3d 1233, *rev. denied* 278 Kan. 847 (2004), which had considered and rejected a challenge to a reasonable doubt jury instruction that used "any" in both places. In *Beck*, the final sentence in the reasonable doubt instruction stated: "If you have no reasonable doubt as to the truth of *any* of the claims required to be proved by the State, you should find the defendant guilty." (Emphasis added.) At the time of Beck's trial, this language was recommended in PIK Crim. 3d 52.02. See 32 Kan. App. 2d at 785. Beck challenged the final sentence of the instruction arguing that "the use of the word 'any' in this context allows for a conviction even if there are insufficient facts to support

*each* element of the crime." 32 Kan. App. 2d at 787. The *Beck* court rejected this argument and stated:

"Again, Beck is focusing on one word of the instruction in isolation from its context. The word 'any' is used consistently in the instruction. The sentence immediately preceding the language Beck finds objectionable states: 'If you have a reasonable doubt as to the truth of *any* of the claims required to be proved by the State, you must find the defendant not guilty.' (Emphasis added.) We reject Beck's argument that the word 'any,' as used in this context, could somehow create ambiguity or result in Beck being convicted if only one element of the crime is proven. Furthermore, Instruction No. 11, listing the elements of the crime of aggravated escape from custody, contains the language: 'To establish this charge, *each* of the following claims must be proved . . . .' (Emphasis added.) This language negates any potential confusion that may have been caused by the use of the word 'any' in Instruction No. 6." 32 Kan. App. 2d at 787-88.

Womelsdorf's case is identical to *Beck* and clearly distinguishable from *Miller*. The *Beck* court rejected the defendant's argument that the use of the word "any" in the final sentence of the instruction could somehow create ambiguity or result in the defendant being convicted if only one element of the crime was proven by the State. The *Beck* court emphasized that the elements instruction for the crime charged in that case stated: "To establish this charge, *each* of the following claims must be proved . . . ." (Emphasis added.) 32 Kan. App. 2d at 787-88. Likewise, here, the jury instruction on arson stated: "To establish this charge, *each* of the following claims must be proved . . . ." (Emphasis added.) The jury instructions on the lesser included offense of arson of an automobile and on fraudulent insurance act also contained this language.

In *Miller*, the elements instructions required the jury to find each of the following claims proved as well, but the *Miller* court found that there was tension between this requirement and the reasonable doubt jury instruction's language stating that, in order to acquit, the jury must find "reasonable doubt as to the truth of *each* of the claims required to be proved by the State." 2012 WL 401601, at *5. But that language was not present in Womelsdorf's instruction; rather, her instruction told the jury that, in order to acquit, it must find "reasonable doubt as to the truth of *any* of the

claims required to be proved by the State." In this way, Womelsdorf's case is again distinguishable from *Miller*.

In 2005, following this court's decision in *Beck*, the PIK committee modified the reasonable doubt instruction at PIK Crim. 3d 52.02. The current approved instruction provides the following test:

"If you have a reasonable doubt as to the truth of *any* of the claims required to be proved by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of *each* of the claims required to be proved by the State, you should find the defendant guilty." (Emphasis added.)

The current approved version of PIK Crim. 3d 52.02 provides the most accurate test for reasonable doubt, and the current instruction is an improvement on the jury instruction given at Womelsdorf's trial. Nonetheless, the language of the jury instruction on reasonable doubt given at Womelsdorf's trial was identical to the instruction recommended in PIK Crim. 3d 52.02 prior to 2005. In fact, the Kansas Supreme Court had previously held that this version of PIK Crim. 3d 52.02 accurately reflected the law of this state and properly advised the jury in a criminal case of the burden of proof, the presumption of innocence, and reasonable doubt. See *State v. Clark*, 261 Kan. 460, 474-75, 931 P.2d 664 (1997).

Applying the reasoning in *Beck* and considering the jury instructions given at Womelsdorf's trial as a whole, rather than isolating any one instruction, we find that the instructions were substantially correct and the jury could not reasonably have been misled by them. The reasonable doubt instruction given by the district court at Womelsdorf's trial was not a clear misstatement of the law, as was the situation in *Miller*. We conclude that the reasonable doubt instruction provided in Womelsdorf's case, while not the best practice, was not clear error. Accordingly, Womelsdorf is not entitled to a new trial based on the jury instructions.

Affirmed.